[No. 5013.]

# W. P. MORRISON *v.* THE GOLD MOUNTAIN GOLD MINING COMPANY.

* CONTRACT OF CORPORATION. — An agreement among parties owning a mine, and who expect to incorporate, but have not done so, that a person is entitled to two thousand five hundred shares of the stock of the company, is not the agreement of the corporation.

ACTION FOR CONVERTING CORPORATION STOCK. — A person who has not the legal title to the stock of a corporation cannot maintain an action against the corporation for converting it.

CONVERSION OF SHARES OF STOCK BY CORPORATION. — An order of the president of a corporation drawn upon himself as president to transfer to a person a certain number of shares of stock of the corporation, followed by the refusal of himself and the secretary to deliver the stock, does not amount to a conversion of the stock by the corporation.

APPEAL from the District Court, Third Judicial District, City and County of San Francisco.

Action to recover damages for the alleged conversion by the defendant of two thousand five hundred shares of its stock. In November, 1873, E. J. Baldwin acquired, by purchase from the locators, a gold-bearing ledge in San Bernardino County. He and other parties afterward formed the corporation, the defendant here, for the purpose of working the ledge, with a capital stock of sixty thousand shares. While engaged in forming the corporation, but before it was formed, the parties in interest agreed among themselves that the plaintiff was entitled to two thousand five hundred shares of the stock on paying his *pro rata* of the purchase-money paid for the mine, and of the expenses in working. E. J. Baldwin was elected President of the corporation, and J. P. Cavallier its Secretary. On the 21st of February, 1874, Baldwin delivered to the plaintiff the following order:

"To E. J. BALDWIN, President of the Gold Mountain Mining Co. — Please transfer to W. P. Morrison, or order, twenty-five hundred shares of the Gold Mountain Gold Mining Company stock, said W. P. Morrison to pay his *pro rata* of purchase-money paid for the mine, and also his *pro rata* of all expenses for working the mine to the date of delivery of the stock.
"San Francisco, Feb. 21st, 1874.
            " (Signed)            E. J. BALDWIN,
                "President of the Gold Mountain Gold Mining Co.
"Witnesses: J. P. Cavallier, S. H. Baird."

On the last of February, 1874, the plaintiff called at the office of the corporation, and offered to pay his *pro rata* of the purchase-money and expense of working, and demanded from the President and Secretary the stock, and at the same time

presented the above order. They refused to receive the money or deliver the stock. On the 21st of April, 1873, the corporation had issued said twenty-five hundred shares of stock to E. J. Baldwin, trustee. The Court rendered judgment for the plaintiff, and the defendant appealed.

*Sol. A. Sharp*, for the Appellant.

The corporation had no power to transfer the stock named in the order; nor had Baldwin, as President, or otherwise, power to bind the company by any such order, or to impose upon the corporation the necessity of keeping his private accounts, as required by the order. The plaintiff has misconceived his action. Baldwin, if any one, is liable to him. ( *Taft.* v. *Brewster*, 9 Johns. 333; to the same effect, *Stone* v. *Wood*, 7 Cowen, 452; *Hills* v. *Bannister*, 8 Cowen, 32; *White* v. *Skinner*, 13 Johns. 307.) The President of a corporation is not *ex officio* the agent of the corporation to sell property; and unless appointed by the agent to sell, his representations are not binding on the corporation. ( *Crump* v. *U. S. Mining Co.* 7 Garatt, 352.) The *company*, by common consent of all parties originally interested, rightfully issued all the original shares of the capital stock to E. J. Baldwin, trustee, (not President) who held a personal lien upon each of said shares for its proportion of the original cost of the mine, necessary expenses, interest, etc. The company, in law, had a discretion and a right to determine to whom the original shares should be issued, and if any shares were issued wrongfully, the parties injured should have pursued the stock. The corporation having issued all the shares of capital stock, were powerless to issue any more. The plaintiff's remedy—if any he had—was clearly against Baldwin, or else to have pursued the stock. The case of the *Mechanics' Bank* v. *New York and New Haven R. R. Co.* 13 N. Y. (3 Kirwan) 600 *et seq.* is decisive of both the first and second. The stock was rightfully issued to Baldwin as trustee, and therefore there was no conversion by the corporation. The plaintiff must pursue the stock.

*T. L. M. Chipley*, for the Respondent.

If the company had a right to issue its stock to Baldwin, it must be responsible to parties injured by it without their consent. And if all the stock of the company had been issued, then it should have cancelled twenty-five hundred shares of the interest of plaintiff, which had been issued to Baldwin, and re-issue the same to plaintiff. The President and Secretary undoubtedly had authority to do this, and as they refused to do so, the company is reponsible, as it would have been had they not given them authority to do so, because the law gives them that authority, and the corporation by incorporating under the law renders itself amenable to it.

By the COURT:

1. The agreement " by the parties in interest " that the plaintiff should be entitled to two thousand five hundred shares of the stock of the company was not the agreement of the corporation sued as defendant here, for the corporation at that time had no existence.

2. It does not appear that the plaintiff had the legal title to the stock mentioned in the complaint.

3. It does not appear that the corporation converted the stock in controversy. The order of Baldwin, as " President of the corporation," drawn upon himself as " President of the corporation," followed by a refusal upon his part and upon that of the Secretary to deliver the stock, would not amount to a conversion of the stock by the corporation.

Judgment and order denying a new trial reversed, and cause remanded.