# Moore & Handley Hardware Co. v. Towers Hardware Co.

*Bill in Equity for Injunction, in nature of Bill for Specific Performance of Contract.*

1. *Contract in restraint of trade.*—A contract by which a partnership, engaged in the business of selling hardware, and selling out their stock of plow-blades and plow-stocks to a rival company, agree "not to handle any more plow-blades or plow-stocks," construed in connection with the attendant circumstances showing the extent of country over which the rivalry in business extended, is not an unreasonable restriction or restraint of trade.

2. *Corporation; how far bound by acts or contracts of stockholders individually, before incorporation.*—A corporation is a legal entity, and is not affected by the personal rights, obligations or transactions of its individual stockholders with third persons, whether before or after incorporation; although it may be charged with the engagements of its promoters in anticipation of incorporation, which it has ratified, or the benefits of which it has received, and although a court of equity will not allow partners or associates, by combining as a "paper corporation," thereby to evade responsibility for their individual obligations, but will hold the nominal corporation to a discharge thereof: yet this principle will not be applied, where an injunction is sought against a private corporation, to restrain its violation of a contract entered into, before incorporation, by its principal corporators and stockholders individually, when it is not averred or shown that the corporation was organized fraudulently, as a device to evade the personal obligation of the contractors.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 3d December, 1888, by the Towers Hardware Company, a private corporation, against the Moore & Handley Hardware Company, another private corporation; and sought an injunction to restrain the defendant from selling "plow-stocks and plow-blades," in violation of a contract made between the complainant and a partnership doing business under the name of Moore, Moore & Handley, which was composed of James D. Moore, Benj. F. Moore, and William A. Handley, who, as the bill alleged, afterwards formed the defendant corporation. The com-

plainant was incorporated, under the general statutes, on the 1st February, 1887, and the defendant on the 12th March, 1888; each having its principal place of business in Birmingham, and selling hardware throughout the northern counties of the State mostly on orders effected through their travelling salesmen. The partnership of Moore, Moore & Handley had been engaged in the same business, and on the 27th May, 1887, they sold out their entire stock of plow-stocks and plow-blades, at the price of $728 paid in cash, to the complainant; signing an agreement, which was written at the foot of the memorandum, or bill of sale, in these words: "In consideration of above sale, we agree not to handle any more plow-stocks or plow-blades, except railroad plows." The bill alleged that the price paid was about $100 more than the market value of the articles, and that complainant was induced to make said purchase "solely by said written promise and undertaking of said Moore, Moore & Handley." By the terms of defendant's articles of incorporation, its capital stock was $100,000, of which said partners each subscribed $25,000, and one Thos. P. Wimberly $25,000; but the bill alleged that, "if said Wimberly ever really had any interest in said corporation, or the capital stock thereof, by virtue of having paid anything on his subscription, he no longer has any interest therein, nor has had since before (to-wit) August 8th, 1888;" also, on information and belief, that said Moores and Handley "are the sole owners of the capital stock of said corporation, and have been since August 10th, 1888," J. D. Moore being president, Handley vice-president, and B. F. Moore secretary, ever since its organization; that the defendant corporation was organized for the purpose of carrying on the same business which the partnership had carried on; that its capital stock "was paid for wholly and entirely in the stock of goods and assets of said partnership;" that it "succeeded to all the property rights and assets of said partnership, as well as all the liabilities thereof;" that said defendant corporation "is none other than said J. D. Moore, B. F. Moore and Wm. A. Handley, who constituted said partnership, and now constitute said corporation. Your orator can not say whether or not said Moores and Handley organized said corporation for the purpose of evading the force and effect of their said agreement with your orator, but does say and charge that the effect of their doing so would be to perpetrate a fraud on your orator, if they should be allowed to handle plow-blades and plow-

stocks; that the defendant's business, as now conducted, is identically the same as that conducted by said Moores and Handley, is conducted by the same persons, and in substantially the same manner as before, and that the only change in fact has been in the name of the concern. And your orator alleges that said Moores and Handley, in making said agreement with your orator, thereby meant and intended, and such was your orator's intention, that they would not again engage in selling or handling plow-blades or plow-stocks in connection with their said business in the city of Birmingham, so long as your orator was engaged in the like business."

The defendant answered the bill, admitting its allegations as to the contract between the complainant and Moore, Moore & Handley, and the nature of the business carried on by the several parties; denying that it assumed, or in any manner became liable for, the obligations of said partnership, or of its individual partners, or that it acquired any interest in the outstanding notes and accounts due to said partnership, or the real estate owned by the partners, which was more than sufficient to pay all their outstanding debts and liabilities; alleging that Wimberly owned a one-fourth interest in the corporation at its organization, and for some time acted as its treasurer, but admitting that the Moores and Handley had since bought out his interest; insisting that said contract was illegal and void, because in restraint of trade, and, if valid, was not binding on the defendant; and demurring to the bill for want of equity.

After answer filed, the defendant submitted a motion to dissolve the temporary injunction, and to dismiss the bill; and this appeal is taken from the decree of the chancellor overruling and refusing these motions.

SMITH & LOWE, for appellant.—(1.) The bill in this case asks an injunction against an alleged violation of a contract, in the nature of a decree for specific performance; and it presents the anomaly of seeking this relief against a third person, who was not a party to that contract, and is not bound by it. For it is well settled, that a corporation is a legal entity separate and distinct from the individuals who, from time to time, may be its stockholders; deriving all its powers from its charter, or articles of incorporation, in connection with statutory provisions, and liable only for its own contracts, engagements and defaults. Whatever may be the

[Moore & Handley Hardware Co. v. Towers Hardware Co.]

complainant's rights or remedies against the Moores and Handley individually, the bill shows no cause of action against the defendant corporation.—*State Bank v. Gibson,* 6 Ala. 814; *U. S. v. Planters' Bank,* 9 Wheat. 907; *Kentucky v. Wister,* 2 Pet. 318; *Bank v. Gibbs,* 3 McCord, 377; Mor. Corp., §§ 547–8; *Milk Asso. v. Wall,* 17 Hun, N. Y., 494. (2.) The alleged contract is void, because in restraint of trade.—*Caswell v. Gibbs,* 33 Mich. 331.

CABANISS & WEAKLEY, *contra.*—(1.) The contract, construed in connection with the attendant circumstances, was not an unreasonable restraint of trade, nor otherwise illegal. *Robbins v. Webb,* 68 Ala. 399; *Hubbard v. Miller,* 27 Mich. 15; *Beall v. Chase,* 31 Mich. 490; *Smalley v. Greene,* 35 Am. Rep. 267; Bish. Contracts, §§ 513–20; 2 High Inj., § 1170; 2 Benj. Sales, 696, n. 15. (2.) A court of equity regards the substance, rather than the form of things, and will not permit parties to screen themselves behind the legal fiction of a corporation's separate entity, in order to carry on a business which they can not conduct in their own names—will not allow them to do by indirection what they can not do directly; but will look beyond technical rules, when necessary to do justice, or to prevent fraud.—Mor. Corp., 1, 227, 1012, 1031; *Gas Co. v. West,* 52 Iowa, 16; *Beall v. Chase,* 31 Mich. 490; 20 Fed. Rep. 699, 700; 28 N. J. Eq. 151; 3 Amer. Rep. 164.

McCLELLAN, J.—The equity of the bill, so far as the injunction is concerned, and the sufficiency of those of its allegations which are not denied by the answer to sustain the injunction, depend primarily on two questions: *first,* whether the contract relied on is void, as being in unreasonable restraint of trade; and, *second,* whether a negative undertaking entered into by persons who subsequently organize, and for the time constitute, a corporation for the prosecution of the business with respect to which the contract was made, can be inforced by injunction against the corporation.

1. It is insisted that the agreement of Moore, Moore & Handley, "not to handle any more plow-blades or plow-stocks," is an unreasonable restriction on trade, in that it contains no limitation as to the place or locality at or in which they are to refrain from carrying on the specified business. It is true that such contracts must be limited as to the space they are intended to cover, or they can not be supported.

14

The meaning of a contract of this character, however, is not to be found solely from a consideration of its expressed terms. Courts look to all the circumstances surrounding the parties, and attendant upon the transaction, and from a consideration of these circumstances, in connection with the expressions of the undertaking, they will first construe the contract, and then proceed to pass upon its reasonableness as thus construed. In the case at bar, the facts were, that both parties were engaged in a certain business, in and covering that part of the State of Alabama which embraces and lies north of the city of Birmingham. It was a character of business, as conducted by them, which could reasonably and naturally be carried on throughout the territory. Over this space they were dealing in competition with each other, and presumptively the operations of each were detrimental to the trade of the other, and the agreement of either to desist from these operations redounded to the advantage of the other. The bill alleges, and the answer does not deny, that the written agreement, copied above, was made with respect to the trade thus carried on in the territory including, and north of Birmingham, in Alabama. The contract will, therefore, be construed with reference to these facts, and held to mean that Moore, Moore & Handley would not handle plowstocks and blades in competition with, or opposition to the Towers Hardware Company, within the territory covered by their previous competition, and described as that part of Alabama which includes and lies north of Birmingham. Thus construed, it becomes specific as to time, space, and character of the dealing intended to be restrained, and is reasonable and valid.—*Hubbard v. Miller*, 27 Mich. 15; *Curtis v. Gokey*, 68 N. Y. 300; *Warfield v. Booth*, 33 Md. 63; *Dethlifs v. Tomsen*, 7 Daly, 354; *Beal v. Chase*, 31 Mich. 490; *Havner v. Graves*, 7 Bing. 735; *Whittaker v. Howe*, 3 Beav. 383; *Tallis v. Tallis*, 1 El. & Bl. 391; *Morse Machine Co. v. Morse*, 103 Mass. 73; *O. S. Nav. Co. v. Winsor*, 20 Wallace, 64.

2. The general doctrine is well established, and obtains both at law and in equity, that a corporation is a distinct entity, to be considered separate and apart from the individuals who compose it, and is not to be affected by the personal rights, obligations and transactions of its stockholders; and this, whether said rights accrued, or obligations were incurred, before or subsequent to incorporation.—Morawetz on Priv. Corp. 227–234, 547–549; *Morrison v. Gold Mt. G.*

*M. Co.*, 52 Cal. 309; *Hawkins v. Mansfield G. M. Co., Ib.* 515; *Gent v. M. & Mut. Ins. Co.*, 107 Ill. 658; *Caledonian R. Co. v. Helensburgh*, 2 Macg. 391; *Penn. Mat. Co. v. Hapgood*, 141 Mass. 147.

There is a class of contracts, however, which are entered into between the promoters or prospectors of a contemplated corporation and third persons, on the faith of the corporation, intended to enure to its benefit, and which in point of fact do enure to its benefit, on which the corporation will be charged, even in the absence of an express promise to perform, or ratification on the part of the company after it is *in esse;* on "the familiar principle, that one who accepts the benefit of a contract, which another volunteers to perform in his name, and on his behalf, is bound to take the burden with the benefit."—Redfield on Railways (5th Ed.), 18; *Edwards v. Grand Junc. R.*, 1 M. & Cr. 650; *Stanley v. Birkenhead R.*, 9 Sim. 264; *L. R. & Fet. S. R. Co. v. Perry*, 37 Ark. 164; *Perry v. L. R. & Fet. S. R. Co.*, 44 Ark. 383; *Bommer v. Am. Spiral Co.*, 81 N. Y. 468.

And in those cases where "associates combine together to create a paper corporation, to cover a partnership or joint venture, and where the stockholders are partners in intention," and have resorted to the fiction of separate corporate entity to free themselves from individual obligations which had attached to them, with respect to the business they propose to carry on, prior to the organization of the company, courts of equity, when the ends of justice require it, will disregard and look beyond the fiction of corporate entity, and hold the corporation to a discharge of the liabilities resting on its members; and this may be done, although some of the shareholders had not originally incurred the obligation sought to be enforced, provided they had notice of it before entering the corporation, and participated in the effort to avoid it.—*Davis Imp. Wrought Iron W. W. Co. v. Davis Wrought Iron W. Co.*, 20 Fed. Rep. 700; *Beal v. Chase*, 31 Mich. 490, 495, 532.

The contract of Moore, Moore & Handley, sought to be enforced against the Moore & Handley Hardware Company, was not an undertaking between promoters of the company and third parties, nor made on the faith of the corporation, nor intended to enure to its benefit, nor did it enure, in point of fact, to the benefit of the corporation. It is not of that class of contracts which courts enforce against corporations, on the ground that they were made in the corporate name by

anticipation, and that the corporation received and accepted the benefits resulting from them.

There is no allegation of fraud made against the corporation, or its shareholders, and the implication of the fraudulent effect of the corporate action complained of is denied. It is not shown that this is a mere "paper corporation," to cover a joint venture, in which the corporators are partners in intention, and have resorted to this form for the purpose of evading and avoiding obligations which they had taken upon themselves as individuals, or for the purpose of evading the promise relied on here. If these things had appeared in the case, we should not hesitate to hold the corporation answerable for the individual obligation. But, in the absence of fraud, "no authorities have gone the length of holding that any contract made with individuals, exclusively upon individual credit, will become the contract of any future corporation that may be formed for the more convenient management and use of the benefits of it."—*L. R. & Ft. S. R. Co. Cases, supra.*

If the case of *Beal v. Chase, supra,* goes beyond this doctrine, we can not indorse it. We do not think it does. In that case, the corporation had been formed *for the purpose* of violating a contract not to engage in a certain business. All the corporators were held to have participated in this purpose. The business was to be conducted by the corporation, in connection with the promisor in his individual capacity. He had an interest in it, both individually and as the principal shareholder of the company; and the court enjoined the corporation, not generally, but from carrying on the business with or for the individual contracting party. To put the case at bar in line with that case, it would have to appear, not only that the corporators organized for the purpose, and with the intention of evading their contract, through the separate entity of corporate existence, but also that they reserved an interest in the business distinct from their interests as stockholders. None of these facts are shown. The effect of allowing the injunction in this case to continue, would necessarily be to hold all future shareholders in the corporation to the performance of a contract which neither they nor the corporation had ever entered into, and of which they may not even have had notice. Such a result could only be justified on the ground of bad faith in the creation of the company. To thus hamper a *bona fide* corporation, would be inequitable, and have the effect of

[Beck v. West & Co.]

establishing a doctrine fraught with much danger to corporate rights, powers and property.

The allegations going to show a ratification, by the corporation, of this contract of Moore, Moore & Handley, are denied by the answer, and hence can not be considered in passing on the decree overruling the motion to dissolve the injunction. Those allegations of the bill which are not denied, were not sufficient to authorize a continuance of the injunction, and the decree on that point was erroneous, and is reversed.

The contract relied on here is such a one as the respondent corporation could have made under its charter. It is, therefore, one which, being already in existence between complainant and the individuals composing the defendant company, the corporation had the power to ratify and adopt. The bill, in our judgment, sufficiently avers such ratification or adoption. These allegations give equity to the bill, and the decree overruling the demurrer is affirmed.

The cause will be remanded, with instructions to the chancellor to dissolve the injunction, unless the complainant amends its bill so as to entitle it to a continuance of the writ, under the principles we have announced.

Reversed and remanded.