[Dexter, *et al.* v. McClellan & Scheerer, *et al.*]

# Dexter, *et al. v.* McClellan & Scheerer, *et al.*

*Bill in Equity to enforce Trust in the Bonds of a Corporation.*

1. *Contract; sufficiency of consideration.*—Services in organizing a corporation and in procuring a sale of land to it, if untainted with fraud or illegality, constitute a valuable and lawful consideration for a contract.

2. *Same; same; when contract not against public policy.*—A vendor's promise to compensate officers of a private corporation for services in its promotion and organization, and for procuring the sale of his land to it, which sale was not rescinded, is not, by reason of the antagonistic relations and peculiar opportunities for fraud, against public policy and illegal, no fraud being disclosed.

3. *Same; same; creation of trust; estoppel.*—Where in effecting a sale of lands to a corporation, the vendor recognizes the right of the promoters of such corporation to a profit arising from such sale, in payment of their services in the promotion and organization of the corporation, and agree with said promoters that the recited consideration of the purchase price shall include their agreed compensation, and that in the note executed by the corporation to him for the purchase money, their recognized profits and compensation shall be included, and that they shall have a proportionate interest in the bonds delivered by the corporation as collateral security to such note, and that he will deliver such bonds to them, there is created a trust in favor of such promoters, which, in the absence of fraud on their part, is enforceable, and the sale of the land being unrescinded, such vendor can not repudiate the trust upon which he received the share of the bonds agreed to be delivered to the promoters, upon the ground that they had, by reason of their relation to the company, peculiar opportunities to commit a fraud upon the company, in the interest of the vendor and themselves, and that, therefore, such a contract was against public policy, no fraud being shown.

4. *Same; when agreement does not include assignment of pledge.* Where, by a contract, a single note was made to include a specified debt of the payee, and a separate debt of a third person, and mortgage bonds are given as collateral security to such note, and it is stipulated in said contract that there shall be delivered to each of said parties a proportionate share of such bonds, such a contract does not constitute an assignment of the pledge, without the assignment of the debt it secures, as is prohibited by section 1784 of the Code of

[Dexter, *et al.* v. McClellan & Scheerer, *et al.*]

1886, (Code of 1896, § 947); each of the parties having an independent, original interest in his specified portion of the debt, and a like original interest in the bonds for its security.

5. *Collateral security of the debt of a corporation; delivery of bonds in excess of a debt not a fictitious issue.*—Where a corporation gives as collateral security to a debt its mortgage bonds of the face value in excess of the debt secured, there is no fictitious issue or disposition of the bonds within the prohibition of the Constitution, (Article XIV, section 6).

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JERE N. WILLIAMS.

The bill in this case was filed by the appellants, R. P. Dexter and Phares Coleman, against the appellees, to enforce the specific performance of an alleged contract between the defendants, R. H. McClellan and Charles Scheerer and the complainants, and to establish a trust in certain bonds of a corporation, and for the foreclosure of a deed of trust securing said bonds.

The facts averred in the bill were substantially as follows: Charles Scheerer and R. H. McClellan were the owners of four-fifths interest in certain lands near the city of Montgomery, Alabama, and one A. W. LeBron and W. C. Agee the owners of the remaining one-fifth. Said LeBron formed a plan of organizing a corporation to build a street railway through certain streets of the city of Montgomery out to the said lands, and to purchase the lands. This plan was concurred in by said McClellan and Scheerer and Agee and LeBron, and all agreed to sell said lands including the entire ownership for $60,000 cash. Thereupon LeBron, with the assistance of complainants, Coleman and Dexter, whom he engaged to assist therein, organized a corporation known as the Montgomery and Cloverdale Street Railway Company, and obtained franchises from the city of Montgomery for the construction of a street railway; and afterwards complainants and LeBron organized another corporation known as the Cloverdale Land & Development Company, and the said Montgomery & Cloverdale Street Railway Company, by proper instruments, conveyed to said Cloverdale Land & Development Company said franchises and right-of-way. Said McClellan and Scheerer and LeBron and Agee agreed that said lands should be sold to said Cloverdale Land & Development Company on their being paid $60,000. To enable LeBron to ac-

complish this purpose, said McClellan and Scheerer jointly, and said Agee separately, executed deeds to said LeBron to said lands ; the said McClellan and Scheerer depositing their deed in escrow on or about the 2d of February, 1892, to be delivered to said LeBron upon his payment of $48,000, the consideration therein mentioned, for their four-fifths interest. It was understood that LeBron directly or mediately would convey the lands to the corporation at a price in excess of $60,000, namely, $85,000, the excess, $25,000 being the profits which should belong to LeBron and complainants for their services in effecting said sale. LeBron had agreed with complainants that each of them should have $5,000 of said profits in consideration of their services in promoting and organizing the company and in effecting said sale. The above agreement on the part of McClellan and Scheerer was not carried out. In September, 1892, LeBron executed a deed conveying his and said Agee's interest in said land to said Scheerer, which vested the entire ownership in the land in McClellan and Scheerer ; and in November, 1892, McClellan and Scheerer withdrew their deed from escrow and refused to carry out the arrangement originally agreed upon. They, however, agreed to sell the lands to the Cloverdale Land & Development Company, provided their share of the proceeds, as vendors of the entire legal title, which they then held, was increased to $70,000, and the profits which complainants and LeBron were to receive reduced to $15,000. Said LeBron and complainants agreed to increase the amount which McClellan and Scheerer would receive to $70,000, and to reduce the amount which would go as profits to $15,000. This new agreement is thus stated in paragraph 5 of the bill : "Said McClellan and Scheerer in consideration of the increase of the amount which was to be paid them as vendors from $60,000 to $70,000, agreed to sell said lands to the Cloverdale Land & Development Company for $85,000 with 105 of said bonds as collateral, as hereinafter stated, and further agreed that the interests of complainants in the proceeds of sale, namely $5,000 each, should be protected by said collateral ; the said interests of complainants in said note and collateral being placed on the same footing with the residue of said note. It was expressly understood and agreed between said

McClellan & Scheerer, LeBron and each of complainants that said note for $85,000 was given for and included the purchase money, to-wit, $70,000 and the $15,000 which it was agreed LeBron and complainants were to receive for effecting said sale of the land and for securing the construction of said railway, and for enhancing and developing the value of the same." Dexter, one of the complainants, was a director of the Cloverdale Land & Development Company to whom the land was sold by appellees. He was also treasurer of the corporation, and LeBron was its president. The terms of the contract between McClellan and Scheerer and complainants, under which they claim the rights they seek to enforce, are stated in the opinion.

Upon the said arrangement being made, it is averred McClellan and Sheerer delivered a conveyance of said lands to one Pickering for the benefit of the Cloverdale Company in consideration of the note and obligation of said company for $85,000, a copy of which is attached as exhibit A. to said bill, the same being secured by 105 of said bonds of $1,000, each, deposited as collateral to said indebtedness as set forth in said obligation. The said deed when executed by said McClellan and Scheerer was not delivered by them to Pickering but was deposited by them with the Bank of Montgomery to be delivered to the said Cloverdale Land & Development Company on the bank receiving the 105 bonds mentioned in said note or obligation of which exhibit A. is a copy. The bill avers that it was expressly agreed and understood between McClellan and Scheerer and complainants that when said bonds were delivered by the Cloverdale Land & Development Company, the proportion thereof which constituted the collateral to so much of said indebtedness, as was due complainants, to-wit, $10,000, should be delivered to complainants by the agent of said McClellan and Scheerer, the Bank of Montgomery. Complainants applied twice for said bonds but they were refused. The said corporation has failed to pay any part of said purchase money for said land.

It was further averred in the bill that said corporation was also indebted to Townsend & Brown, in the sum of $138,000 for building and equipping its railroad, which indebtedness was secured by 224 of said mortgage bonds; that the corporation failed also to pay said

Townsend & Brown, whereupon they reduced their claim to judgment, and filed a bill in equity to enforce their lien.

It appears from the bill that Townsend & Brown and McClellan and Scheerer were the holders of 329 of the entire issue of 350 bonds, and that twenty of the remainder were in the treasury of the company, and the remaining one had been obtained from the company by Pickering and deposited as collateral for his own indebtedness ; that Townsend & Brown, who had not been paid for constructing the railroad, and McClellan and Scheerer, who had not been paid for their land, agreed that the property of said corporation, consisting only of said railroad and land should be sold under a decree to be rendered in said suit brought by Townsend & Brown and bought in by the latter, and that when purchased said Townsend & Brown should retain their said railroad and part of the land that had been conveyed to the company and convey the remainder of said land to McClellan and Scheerer, and that being then together the owners of all the property of said company, and of the indebtedness constituting a lien thereon they should deliver up the evidences of said indebtedness, the bonds, to the trustee and have the same cancelled. The bill further avers that said property was purchased by said Townsend & Brown under decree in their said suit as proposed, and divided between them and McClellan and Scheerer in the manner agreed upon, as above stated ; that said Townsend & Brown and McClellan and Scheerer, sold the bonds they respectively held as collateral and purchased same at such sales, and purposed to surrender said bonds to said trustee, and procure the cancellation of the same, and the satisfaction of the said mortgage by which the same were secured, thus leaving the title obtained by said Townsend & Brown by the purchase at said register's sale to all of said property, free from any incumbrance by reason of said mortgage. The bonds sold and purchased by McClellan and Scheerer included the bonds held by them as collateral to the $10,000 due complainants. Townsend & Brown sold the said portion of said property allotted to them under said agreement with McClellan and Scheerer to the Montgomery Street Railway, another corporation operating street railways in the city of Montgomery, and said corporation mortgaged said

property, together with its other property, to secure an issue of $350,000 bonds.

The prayer of the bill, after asking for process of subpœna against each of the parties defendant, continued as follows: ''and upon the hearing may it please your honor to adjudge and decree that complainants are equitably and justly entitled to twelve and one-half of said bonds issued by the Cloverdale Land & Development Company to said Farmers Loan & Trust Company and that the said R. H. McClellan and Charles Scheerer be decreed to hold the same in trust for the complainants. That said Farmers Loan & Trust Company be removed as said trustee under the said mortgage deed of trust, and that a receiver be appointed to take possession of all the property covered by said mortgage deed of trust. That the principal sum of all the bonds outstanding secured by said mortgage deed of trust be declared to be due and that said mortgage deed of trust be foreclosed. That a receiver be required to take possession forthwith of all of said property conveyed by said mortgage deed of trust and hold the same until the same can be disposed of for the payment of the indebtedness thereby secured. That an account be stated against the Montgomery Street Railway and W. M. Brown for all of said mortgage property not delivered to said receiver, and of the franchises and other property, rights and privileges of the said Cloverdale Land & Development Company which said Montgomery Street Railway converted to its own use. That an account be taken of the indebtedness justly due to complainants and to the other holders of said bonds entitled to the security of said mortgage and of the proceeds of the sale of the mortgage property, and that the proceeds of the foreclosure of said mortgage deed of trust be distributed *pro rata* amongst the said parties entitled thereto, and complainants pray for all such further, other and different relief as the nature of the case may require and to your honor seemeth meet.''

The parties made defendant to the bill were R. H. McClellan, Charles Scheerer, A. C. Townsend and William M. Brown, late partners, doing business under the firm name of Townsend & Brown, the Cloverdale Land & Development Company, A. W. LeBron, Frank B. Pickering, Barney French and W. C. Agee.

The defendants, R. H. McClellan and Charles Scheerer

and Townsend & Brown, demurred to the bill, separately, upon the following grounds : 1. Said bill fails to show that these defendants agreed to hold any portion of said bonds for complainants. 2. Said bill fails to show that these defendants agreed to deliver any portion of said bonds to complainants. 3. Said bill shows that said bonds were sold and bought by these defendants. 4. Said bill fails to show what these defendants realized from said sale of said bonds. 5. Said bill fails to show any consideration for the agreement that the complainants should have an interest in said note or bonds. 6. Said bill shows that complainants have an adequate remedy at law. 7. Said agreement that complainants should receive said portion of the purchase money for said land evidenced by said note was illegal. 8. Said agreement to deliver said portion of said bonds to complainants was illegal.''

Upon the submission of the cause upon these demurrers, the court rendered a decree sustaining them. The complainants appeal from this decree, and assign the rendition thereof as error.

TROY & WATTS, for appellant.—1. The word promoter has no technical legal meaning, and applies to any person who takes an active part in inducing the formation of a company, whether he afterwards becomes connected with the company or not. It frequently happens that persons who own property, which is adapted to business uses, bring about the formation of a company for the purpose of selling the property to a company at a profit and provide the money to pay the purchase price by inducing others to subscribe for shares. There is no rule of law prohibiting a transaction of this description. 1st Morawetz on Corporations, Section 545, where numerous authorities are cited. There is no rule of law prohibiting a person from forming a company for the purpose of selling property to it and making a profit by the sale. The law merely requires that such a transaction be entirely open and free from deception upon the company and those who become its members. This rule applies equally to corporations and unincorporated associations.—*Erlanger v. New Sombrero Phosphate Co.*, 3 App. Cases, 1236 ; *Gover's Case*, L. R. 1 Ch. Div. 182 ; *Albion Steel etc., Co. v. Martin*, L. R. 1 Ch. Div. 580 ; *Densmore*

[Dexter, *et al.* v. McClellan & Scheerer, *et al.*]

*Oil Co. v. Densmore*, 68 Pa. St. Rep. 443 ; *Lungren v. Pennell*, 10 W. N. C. (Sup. Ct. Pa.) 297 ; *O'Connor M. & M. Co. v. Coosa Furnace Co.*, 95 Ala. 614.

2. The original contract did not become illegal nor was it vitiated because of the fact that LeBron became an officer of the corporation, nor that Coleman and Dexter also became officers of the corporation. It does not appear that they controlled the corporation, or that any fact was concealed about the corporation or its organization, nor that by the sale and conveyance of the land to it any body was injured or defrauded. It is true that LeBron, as a promoter, occupied a fiduciary relation to the corporation ; but that fact does not of itself render void or illegal the transfer or conveyance to the corporation of the property, nor does it render void or illegal the agreement that he should be compensated. In *O'Conner M. & M. Co. v. Coosa Furnace Co.*, 95 Ala. 617–18, the Supreme Court says : "The duty which disqualified the directors from binding the corporation by a transaction in which they have an adverse interest is one owing to the corporation which they represent, and to the stockholders thereof. A principal may consent to be bound by a contract made for him by an agent who, at the same time, represented an interest adverse to that of the principal. A *cestui que trust* may elect to confirm a transaction which he could have repudiated on the ground that the trustee had an interest in the matter not consistent with his trust relation. In like manner, dealings between corporations, represented by the same persons as directors, may be accepted as binding by each corporation and the stockholders thereof. The general rule is, that such dealings are not absolutely void, but are voidable at the election of the respective corporations, or of the stockholders thereof. They become binding, if acquiesced in by the corporations and their stockholders."—*Kelley v. Newburyport Horse Railroad*, 141 Mass. 496 ; *Ashhurts's Appeal*, 60 Pa. St. 290 ; *Buell v. Buckingham*, 16 Iowa 284 ; *Manf. Saving Bank v. Iron Co.*, 97 Mo. 38 ; *Alexander v. Williams* 14 Mo. App. 13 ; *Twinlick Oil Co. v. Marbury*, 91 U. S. 587 ; *Booth v. Robinson*, 55 Md. 419 ; *U. S. Rolling Stock Co. v. Atlantic & Great Western R. Co.*, 32 Am. Rep. 380 ; Taylor on Private Corporations, (2d ed.), § 630 ; 1 Beach on Private Corporations, § 347. See also *Combination Trust Co.*

*v. Weed,* 2 F. R. 26 ; *Indianapolis &c. Co. v. St. Louis &c., R. R. Co.,* 120 U. S. 260.

3. When the agent of a person or corporation purchases property from himself or from a company of which he is a member or in which he is interested, no one can claim that said purchase was illegal or in violation of his duty to his principal, except the person or corporation for which he was acting as agent. If there was a fraud in the purchase it was one on the corporation, and if the corporation does not complain, surely McClellan & Scheerer cannot, in order to avoid paying to Dexter and Coleman their part of the purchase price, set up that the contract was a fraud and against public policy. The corporation alone can complain.—*O' Conner M. & M. Co. v. Coosa Furnace Co.,* 95 Ala. 617. It is at the option of the corporation to avoid the contract, and until some act of the corporation indicates a purpose to avoid the contract, it is not a nullity.—*Twinlick Oil Co. v. Marbury,* 91 U. S. 587.

4. Until the corporation speaks and disaffirms what has been done by its directors, McClellan & Sheerer can have nothing to say as to the legality or morality of the transaction.—*Wann v. Kelly,* 5 F. R. 584 ; *Brooks v. Martin,* 2 Wall. 70 ; *Sharp v. Taylor,* 2 Phillips Ch. 801 ; *Tenant v. Elliott,* 1 Bos. & P. 3 ; *Farmer v. Russell,* 1 Bos. & P. 296 ; *Thomson v. Thomson,* 7 Vesey 473 ; *McBlair v. Gibbes,* 17 How. 232.

HORACE STRINGFELLOW, *contra.*—1. The alleged agreement which the bill seeks primarily to enforce, was either without consideration, or was illegal because corrupt in its tendencies, and hence opposed to the policy of the State. It has been uniformly held that a director or superintendent or agent of a corporation has no right or authority to stipulate for a commission or *bonus* to be paid to him by a person with whom he enters into a contract in behalf of the corporation.—*Perry v. Tuscaloosa Oil Co.,* 93 Ala. 370 ; *Woodstock Iron Co. v. Extension Co.,* 129 U. S. 662 ; *M. & O. R. R. Co. v. Nicholas,* 98 Ala. 92 ; *Fuller v. Dame,* 18 Pick. 472 ; *Spinks v. Davis,* 32 Miss. 152 ; *Atlee v. Fink,* 42 Amer. Rep. 385 ; *Merritt v. Lambert,* 10 Paige 352 ; *Clarke v. Colbert,* 67 Ala. 96.

The bill does not show that complainant Coleman was a director of the corporation at the time of the alleged

agreement by McClellan & Scheerer, although it does show as we have shown that he was a promoter of the corporation, but complainants, Dexter and Coleman, sue jointly upon a single contract, and if complainant Dexter cannot recover, it is clear that Coleman could not recover in this suit even though he came into this court with clean hands, and was otherwise entitled to recover. "The rule is well settled in equity, that all the parties who join in a suit must be entitled to recover or none can. The failure of one is the failure of all."—*Taylor v. Robinson*, 69 Ala. 272. Besides, complainants join in the assignments of error. If the dismissal of the bill was error as to Coleman he should have assigned it separately.—*Kimbrell v. Rogers*, 90 Ala. 339.

2. If the alleged agreement to deliver the bonds were not illegal because corrupt in its general tendency, it was opposed to section 1784 of the Code, which provides "collateral securities taken or property pledged to secure the payment of a debt must not without a transfer of the debt, be transferred or assigned otherwise than is hereinafter provided." The bill shows that the bonds were deposited as collateral for an entire debt, on its face, to McClellan & Scheerer. The agreement therefor to deliver to complainants part of the collateral for the breach of which this suit is instituted was contrary to the prohibition of the statute, and hence illegal, and could not have been enforced.—*Youngblood v. Birmingham Trust & Savings Co.*, 95 Ala. 526.

3. The contract between the complanants and McClellan & Scheerer was void as being made in contravention of the Constitution of the State which provides that : "No corporation shall issue stock or bonds except for money, labor done, or money or property actually received and all fictitious increase of stock or indebtedness shall, be void."—Const., Art. XIV, § 6.

5. If the bonds when delivered to complainants could not be enforced in their hands by a foreclosure of the deed of trust as prayed in the bill as against Townsend & Brown a court of equity will not decree that they be delivered to be transferred into other hands or to operate as an instrument of oppression against them. Complainants, if they have any rights under their alleged agreement, will be left to their remedy at law. Again the change in circumstances would render it inequitable

to enforce the alleged agreement ; and where such is the case equity will leave the parties to their remedy at law. *Daniel v. Collins*, 57 Ala. 625 ; *Elliott v. Wade*, 47 Ala. 456.

HEAD, J.—Growing out of the acts and negotiations of the parties minutely set out in the bill as inducement, a contract, from which complainants derived the equity they claim, was entered into by McClellan & Scheerer and complainants, by which it was agreed that McClellan & Scheerer, who had become invested with the legal title to the lands mentioned in the bill, in the manner and for the purposes therein described, should sell and convey said lands to the Cloverdale Land & Development Company, a corporation, at the price of $85,000. By virtue of the particular considerations alleged, McClellan & Scheerer were to have $70,000 of this sum, and complainants, Dexter and Coleman, and said McClellan & Scheerer, as the assignees of one LeBron, were to have the remaining $15,000, thus giving to Dexter and Coleman, each, $5,000. By the contract the Cloverdale Company, purchaser, was to execute its note to McClellan & Scheerer for said $85,000, and secure the same by 105 of its first mortgage bonds, each for $1,000, and that the interest of complainants in the proceeds of the sale, viz., $5,000 to each of them, should be protected by said collateral (bonds)—the interests of complainants in said note and collaterals being placed on the same footing with the residue of the indebtedness, evidenced by said note. It was agreed that when the bonds should be issued the complainants' proportion of them, to secure their interest in said purchase money, should be delivered to them by the agent of McClellan & Scheerer. The sale was made and note and bonds were executed and were taken and held by McClellan & Scheerer in trust for their own use to the extent of $70,000 of said amount, and for the use of each of complainants to the amount of $5,000, and for the use of themselves, as assignees of LeBron, to the extent of $5,000. Complainants applied to McClellan & Scheerer for an order on their agent for their share of said bonds, but they declined to give it, alleging as a reason therefor that they preferred to hold the entire collateral until the whole matter was settled. Com-

plainants protested against this refusal, and afterwards made another demand upon them, which was refused.

Afterwards, McClellan & Scheerer disposed of the entire collateral and acquired therefor, by means stated in the bill, a part of the lands of the Cloverdale Land & Development Company, which were included in the mortgage given to secure the bonds, thus appropriating to themselves the entire avails of the 105 bonds pledged, to the exclusion of complainants. The series of first mortgage bonds issued by said company, consisted of the said 105, pledged to McClellan & Scheerer, as aforesaid, and 224 pledged to respondents, Townsend & Brown, for an indebtedness due them, and the latter, Townsend & Brown, acquired, for their bonds, the residue of said lands, and other property of the debtor company. These acquisitions of the said lands by McClellan & Scheerer and Townsend & Brown were through the medium of decrees of a court of equity, on bill filed by Townsend & Brown against the insolvent company, to which the complainants were not parties, and were accomplished in pursuance of conventional arrangements between McClellan & Scheerer and Townsend & Brown. The latter, at that time, had notice of complainants' rights. The bill seeks by appropriate prayer to establish their proportionate interests in said debt and in the said 105 bonds, and obtain equitable enforcement of their lien upon the lands. The Cloverdale Land & Development Company, having been divested of all their title and interest in the lands, have no interest in the subject matter of this suit. The suit, to this point, is defended only by McClellan & Scheerer and Townsend & Brown, who interposed demurrers to the bill, which the chancellor sustained. The appeal is from that interlocutory order.

The defenses mainly relied upon, in argument, are stated to be, want of consideration, and illegality of the contract. Of the former, dissociated from the latter defense, little need be said. It is clearly shown that the $10,000 interest in the purchase money of the lands, and in the collateral bonds given to secure the purchase money, which were accorded to complainants by McClellan & Scheerer, were so accorded in consideration of services rendered and to be rendered by the complainants, in conjunction with LeBron, who was accorded a

[Dexter, *et al.* v. McClellan & Scheerer, *et al.*]

like interest, in organizing the corporation and bringing about the sale of the lands. That such services, unless tainted with such fraud or illegality, as that a court of equity would repudiate them, constitute a valuable and lawful consideration for a contract, no one will gainsay. So, the real question is, was there such fraud or illegality in the contract, as these parties may avail themselves of, under the circumstances of this case?

. The argument brought to its true analysis is, that the contract is illegal because LeBron and complainants, in rendering the services which brought into being the Cloverdale Land & Development Company, and effectuated the sale by McClellan & Scheerer to that company, of their lands, had, by reason of their relations to the company as its promoters, and two of them, LeBron and Dexter, as officers after its organization, special opportunity to commit a fraud upon the company in the matter of the purchase of the lands; wherefore, because of such antagonistic relations and special opportunity for committing such fraud, it was against public policy for McClellan & Scheerer to promise to compensate the services, and they were consequently under no legal obligation to perform the promise. It is not and cannot be claimed that the bill discloses any actual fraud or imposition practiced by the complainants and LeBron upon the purchasing company. So far as appears, that company may have been fully cognizant of every circumstance and condition of the entire transaction, and have fully and unequivocally confirmed its constructively fraudulent attributes, arising out of the relations of trust and confidence which subsisted between it and the complainants, and the antagonistic undertaking, on the part of the latter, to represent the interest of the vendors. The confirmation or repudiation of the purchase was at the election of the company. If, as contended, public policy, merely by reason of these relations, denounced the transaction as vicious, without regard to the election of the purchaser, who might or might not have been defrauded, it would be without the lawful authority of the purchaser to accept a highly advantageous bargain made for it by its officers, who at the same time, for personal aggrandizement, acted for the vendor; and a court of equity would repudiate even a transaction of that character in whatsoever form and by whomsoever

4

it might be presented as a basis of relief.   We cannot
think there is authority for the contention that a sale of
land which a purchaser may rescind, at his election, on
account merely of the fraud which the law, *prima facie*,
imputes to it, when effected by an agent of the pur-
chaser, who at the same time represents the vendor, for
a promised reward, is void against public policy—the
transaction not appearing to be one of a public charac-
ter ; and so long as the purchaser does not complain,
there is no cause for treating the contract of sale other
than as valid, and no reason why the vendor who has
enjoyed the benefit of the unrescinded sale, should not
pay the selling agent his stipulated reward.   The present
case does not call for consideration of an actually cor-
rupt agreement between vendor and the purchasing
agent of the vendee, nor one which appears to be viola-
tive of the rights of the public.   A case of that character
might render apt and controlling the principles declared
in the interesting case of *Woodstock Iron Co. v. Richmond
& Danville Extension Co.*, 129 U. S. 643, and authorities
therein cited.   The Cloverdale Land & Development
Company accepted the purchase, and, it seems, went
into the occupation and enjoyment of the lands ; built
its railroad and entered upon and prosecuted the devel-
opment of the lands.   Becoming unable to meet its lia-
bilities, its assets, consisting in the main of these lands
and its railroad and franchises, were administered
through the courts, and the lands subjected and appropri-
ated to the satisfaction of the mortgage bonds held by Mc-
Clellan & Scheerer ; McClellan & Scheerer holding the un-
disturbed possession of, and title to the 105 bonds
pledged to them as security for the purchase price, upon
the sale of the lands by them to the company—a sale in
all things acquiesced in and validated by the company—
realized upon them all that they found available for
their satisfaction ; and it does not now become them to re-
pudiate the trust upon which they received the share of
the bonds agreed to be delivered to the complainants for
their services, for no other reason than that LeBron and
the complainants had, by reason of their relations to the
company, peculiar opportunities to commit a fraud upon
the company, in the interest of McClellan & Scheerer and
themselves.

   We do not think there was an assignment of the pledge

without an assignment of the debt it secures, as is pro-
hibited by section 1784 of the Code of 1886. Complain-
ants had an independent, original interest in their speci-
fied proportions of the debt, and a like original interest in
the bonds for its security. There was no transfer of the
debt or securities within that statute.

We can see no application of Article XIV, section 6 of
the constitution to this case. The land was sold to the com-
pany for $85,000. It gave $105,000 of its first mortgage
bonds as collateral security, but it was liable for no more
than the $85,000. There was no fictitious issue or dis-
position of the bonds within the prohibition of the con-
stitution. If the bonds had been sold by McClellan &
Scheerer for more than the debt, the company would have
been entitled to a return of the surplus.

It is very clear that the personal remedies of the com-
plainants at law, do not displace their right to enforce
their liens in a court of equity.

The chancellor erred in sustaining the demurrers to
the bill, and an order will be here rendered overruling
the demurrers.

Reversed, rendered and remanded.