# Lea, Adm'r, *v.* Cassen.

### *Action on Bill of Exchange.*

1. *Error, when not ground for reversal.*—If upon the evidence admitted, and that rejected, excluding that to which a party objected, the court could properly have instructed the jury to find against him, and the jury does so find, he can not complain of erroneous rulings on the trial; for all presumption of injury is repelled, and error without injury is not ground for reversal.

2. *Note; when maker can not dispute, or inquire into consideration of.* Where the debtor, at the request of the creditor, makes a note payable to a third person, who sues the maker, the latter can not, in that suit, inquire into or dispute the consideration, moving between the creditor and the payee of the note, or show that it had failed.

3. *Contracts; what illegal.*—All contracts encouraging prostitution, or auxiliary to the keeping of a bawdy house, are void, and the aid of the courts can not be invoked to enforce or rescind them; the principle, however, is confined to the illegal act, or to the original contract, and is not extended to subsequent, new and independent transactions, founded on a new consideration, not a part of the original scheme, though between the same parties and having relation to the same property.

4. *Illegal contract, right of parties to rescind.*—Parties to a void and illegal contract may rescind it, and place themselves in *statu quo*, no other consideration being necessary than their mutual agreement; and when it is agreed that money paid under the rescinded contract should be restored, an action to recover it back can be maintained, upon the agreement of rescission, which is a new and independent agreement, founded on a new consideration, removed from and not a part of the original transaction, and unaffected by its illegality.

APPEAL from Circuit Court of Dallas.

Tried before Hon. GEO. H. CRAIG.

The appellee, Cassen, commenced suit before a justice of the peace, against Etta Mills, to recover the amount of a bill of exchange drawn on, endorsed, and accepted by said Etta Mills, and payable to the plaintiff. Etta Mills having died pending the appeal to the Circuit Court, appellant Lea, who became her administrator, was made a party in her stead.

The material facts of the case may be thus stated: In February, 1873, Etta Mills, alias Eugenie Estes, appellant's intestate, and Jennie Walters were common and notorious pros-

titutes in the city of Selma. Etta Mills sold and conveyed a house and lot, together with the furniture therein, and which said Etta was then using to carry on a bawdy house, to said Jennie Walters, knowing at the time that the latter intended to carry on the "same business." Jennie Walters made a cash payment, and executed a mortgage back to Etta Mills to secure the deferred payment. After this, said Walters continued to use the premises and furniture in keeping a bawdy house. After this, disagreements sprung up between them, and Etta Mills filed her bill in chancery against Jennie Walters, and also brought an action of detinue against her in the Circuit Court. The bill of exceptions does not state the nature of these suits, but is a fair inference from its recitals that the bill was filed to foreclose the mortgage, and the detinue suit was brought to recover the personalty. Bonds had been given and costs incurred in the prosecution of these suits. In December, 1873, the parties agreed to compromise and adjust their differences, rescind their contract, put themselves in *statu quo*, and release each other from all damages or liabilities growing out of the suit, and that the money paid on the purchase should be refunded, less the value of the rent, and the property restored to Etta Mills. Part of the money so to be refunded was to be paid to certain creditors of Jennie Walters. This agreement was reduced to writing, and complied with, and in pursuance thereof the appellant's intestate executed the note sued on to Cassen who was a creditor of said Jennie Walters. There was nothing on the face of this agreement which showed the past use to which the property had been put, or any intention to use it in the future for any illegal purpose, or that the parties thereto were prostitutes. Cassen was not present when this agreement was signed and the notes executed, but his attorney was. At the time of signing the agreement, Etta Mills remarked that she intended to fit the property up nicely when she got it back, and would "keep a number of pretty girls in it." A witness who was present testified, that on the negotiations before and at the time of signing the agreement, neither of the parties said any thing about reforming.

The appellant sought to assail the consideration passing between Cassen and Walters for the indebtedness of the latter to him, and offered proof that the debt was for liquors furnished her, and used in connection with her bawdy house.

The appellant reserved various exceptions to rulings upon evidence, and as to charges given and refused, which are not material in the view the court took of this case.

WHITE & WHITE, for appellant.—The consideration of the bill of exchange sued on, was tainted with the illegality of the transactions between Mills and Walters; and it could only become valid as between Cassen and Mills, by proof of a good and lawful consideration.—See 25 Ala. Rep. 484; 15 Ala. 625.

BROOKS & ROY, *contra.*—1. If an illegal contract be executed or performed, and both parties are in *pari delicto,* no action lies to recover back money paid under it; but if the contract be executory, and the plaintiff dissent from or disavow it before its completion, or the parties mutually rescind it, money paid on it can be recovered under a count for money had and received.—Chitty on Con. (7 ed.) 637, and Eng. and Amer. authorities cited; *White v. Franklin Bank,* 22 Pick. 189. That upon rescission of any contract, either party may recover any money paid out under it, see, also, authorities. 1 Brick. Dig. 141, § 76; ib. 144, §§ 129, 131. Here the contract was executory and uncompleted; it was rescinded by mutual consent; and there was an express promise to refund the money paid under it. Moreover, there was a further consideration, viz: the compromise of two suits, and the release of damages on the bonds given in those suits. Walters being thus entitled to the money, the promise of Mills to pay it to the creditors of Walters, at her request, was on a new, valuable, and lawful consideration.

2. Contracts growing remotely out of an illegal contract,. or contributing indirectly only to the illegal purpose, or founded on a new consideration, are valid and will be enforced; though all parties knew of the original illegal contract or purchase.—41 Ala. 436, *et seq.,* and authorities cited; 25 Ala. 483; 1 Littell, (Ky.) 50; 1 Monroe, (Ky.) 113; 2 J. J. Marshall, (Ky.) 222; 3 Ala. 474, referring to the above Kentucky cases.

BRICKELL, C. J.—The bill of exceptions purports to set out all the evidence which was given to the jury, as well as that which was offered by the appellant and rejected, and that which was admitted against his objection. If on the evidence admitted, and that which was rejected, excluding that which was objected to, the Circuit Court could have properly instructed the jury, that the appellant had established no just defense to the plaintiff's action, it is unnecessary to decide whether its several rulings to which exceptions were reserved, were erroneous or not; for if erroneous, they

have not injured the appellant, and it would be idle to reverse the judgment, for errors of no practical importance. Error and injury, must combine to authorize the reversal of a judgment. Generally, injury will be presumed from error —and the presumption must prevail, unless it is clearly and affirmatively repelled. But when the uncontroverted evidence negatives or fails to establish a right of recovery in the plaintiff; or establishing that right, negatives the defense preferred, the presumption of injury to the one, or the other party, as he may be appellant, is repelled, and the judgment accomplishing the right result, will not be disturbed.—1 Brick. Dig. 780, §§ 96–99.

Whether there was any, or what was the consideration, moving between the appellee and Walters, which induced the latter, to request and cause the bills of exchange to be made payable to the former, is not material. The appellant is not entitled to inquire into, or dispute that consideration. The bills of exchange import that the intestate owed the money expressed in them, and it is unimportant to her, whether her creditor gave it away, appropriated it to the discharge of illegal contracts into which she had entered, or to the payment of her just debts. Authority for payment to the appellee was given, which if revocable, there has been no attempt to revoke, and from the duty of payment, the intestate can not be absolved, by assailing the consideration of the transaction between her creditor and the appellee. The principle is thus stated by Parsons : "If a note be given for a consideration passing between one of the parties to the note and a third person, and the payee sue the maker, it seems to be held immaterial in that action whether this consideration, as affecting the third party has failed or not." 1 Pars. Notes and Bills, 200 ; *Railroad v. Chamberlain*, 44 N. H. 494 ; *Horn v. Fuller*, 6 N. H. 512.

The single question the case presents, is, whether the contract between the intestate and Walters, was so tainted with illegality, that as between them it can not be enforced. All contracts, for the doing of that, which the law forbids, or of that which is *contra bonos mores*, or violative of public policy, are void, and the law will not generally interfere to enforce or rescind them. It leaves the parties severely alone, to abide the consequences of their illegal and immoral conduct. Falling within the contracts, condemned by law, are all "encouraging prostitution, or auxiliary to the keeping of a bawdy house,"—or, in the language of POLLOCK, C. B., "supplying a thing with the knowledge that it is going to

be used for that purpose."—Bish. Con. § 496; 2 Chit. Con. 980. The principle is however confined in its operation to the illegal act, or to the original illegal contract, and is not extended to subsequent, new and independent transactions, founded on a new consideration, not a part of the original scheme, though between the same parties, and having relation to the same property.—Story's Con. Laws, §§ 248–9; *Scheible v. Bacho,* 41 Ala. 423; *Armstrong v. Toler,* 11 Wheat. 258; *McBlair v. Gibbs,* 17 How. 232; *Brooks v. Martin,* 2 Wall. 70. The same reasons and policy on which the law proceeds in denouncing contracts made in violation of law, common or statute, or which offend public morals, or public policy, will encourage parties to a rescission of such contracts, and the restoration of themselves, to the condition in which they were, before they entered into them. The competency of parties to rescind, is as broad as their capacity to make contracts—they may, if they choose, undo what they have done. Generally, no other consideration is necessary to support the rescission of a contract, than the mutual agreement of the parties—no other consideration may intervene. And if there is a rescission, money having been paid by the one party to the other, the law implies, (if there is no express promise), a promise on the part of party who had received, to refund it. When contracts are rescinded, it is a just and a legal presumption, if there is no contrary stipulation, that the parties intend each shall be placed *in statu quo,* or restored to the condition in which he was, when the contract was made.—*Pharr v. Bachelor,* 3 Ala. 237; *White v. Wood,* 15 Ala. 358.

It may be admitted the original contracts between the intestate of the appellant and Walters were void, because of the knowledge of the intestate, of the evil intent and purpose moving Walters to the purchase of the property, and of the immoral use to which she intended devoting it. Nevertheless these contracts the parties could rescind, and if rescinded voluntarily, the rescission is a new and independent agreement, founded on a new consideration, *the mutual agreement of the parties,* and it is removed from, not a part of the *original scheme,* unaffected by its illegality, and the courts will enforce it. It is often said that the test whether a contract or demand connected with an illegal transaction is capable of being enforced, is, whether the plaintiff requires any aid from the illegal transaction to establish his case. It is probably true, as is said by the Supreme Court of the United States, this test is too narrow in its terms and ex-

[Lea, Adm'r, v. Cassen.]

cludes many cases where the plaintiff could establish his case independently of the illegal transaction, and yet his demand would be infected with the illegality. But to this case the test may be applied, or a broader test may be adopted, and the contract of rescission, is a new, independent contract, lawful in itself, founded on a new consideration, and unaffected by the illegality of the contract rescinded. Otherwise, parties who enter into an illegal contract, would be irrevocably and immutably committed to it, though of it they may repent, and though all the purposes of the law and of its policy would be advanced by a rescission. Not only the mutual agreement of the parties, but a new and substantive consideration of value, disconnected from the illegality of the original contract, intervened to support the rescission. The quieting of pending litigation, and the release of the intestate from all liability on the bonds given by her in its course, was of itself a new and sufficient consideration for the rescission; and it was certainly far removed from, and disconnected with the illegality of the original transaction.

It is insisted however that Walters at the time of the rescission knew that the purpose of the intestate in agreeing to rescind, was to obtain possession of the property and appropriate it to the keeping of a house of prostitution, and the agreement of rescission is as illegal, as was the contract rescinded, and consequently no action can be maintained on any promise express or implied of the intestate, which forms part of, or grows out of the agreement of rescission. The answer is, there was no evidence indicating the purpose of the intestate in agreeing to the rescission, was to obtain possession of the property for such purposes. It may have been inferrible from her past conduct, and from the use she had formerly made of the property, that she would devote it to the same uses. But the evidence justifies no other legal inference, than that the moving consideration with the intestate in the rescission, was restoration to the title and possession of property, she had lost by illegal contract, and a release from liability for any breach of the bonds given by her in the course of the suits she had instituted for its recovery. Money lent to a gambler expressly for the purposes of gaming, is not recoverable. But the gambler can not prove his bad character, to raise an inference of guilty knowledge against all who may lend him money—that he borrowed for the purpose of gaming, and consequently they aided him in the gaming at which he risked the money borrowed. The knowledge on the part of the lender which will strip him of

a right to recover, must be, that the money borrowed is for the purpose of gaming, and with that intention on the part of the borrower. If he had no such knowledge, it can not be justly said he enters voluntarily into a contract which contributes to a violation of law.—1 Parsons Notes and Bills, 200. The mere declarations of the intestate as to the uses to which she would appropriate the property when she got it back, were not inconsistent with, or indicative of a purpose different from that so clearly expressed in the writing, the rescission of the former contract, and the restoration of the parties to the condition in which they were, when that contract was made. This purpose was legal and innocent, and knowledge of another, if it existed, must have been brought home to Walters, by clearer and more direct evidence than is shown by the bill of exceptions, before complicity in it could be imputed to her.

We are of the opinion after this examination of the case as it is shown by the bill of exceptions, the Circuit Court could well have instructed the jury to find for the plaintiff, and the appellant could not therefore have been wronged by any of the rulings to which exceptions were reserved.

Affirmed.