(81 South. 656)

### SOUTHERN COTTON OIL CO. v. KNOX et al. (4 Div. 820.)

(Supreme Court of Alabama. April 24, 1919.)

**1. CONTRACTS ⬦⟺116(1) — VALIDITY — EVIDENCE.**

In assumpsit by a cotton oil company on an agreement guaranteeing a contract to purchase cotton seed, *held*, the contract was void as violating Code 1907, §§ 7579, 7581, punishing attempts to destroy competition.

**2. CONTRACTS ⬦⟺138(1)—ILLEGALITY—RIGHT OF ACTION.**

Where an action is sought to be maintained on an illegal contract, the law will afford no relief, but will let the parties abide the consequences of their illegal agreement.

**3. GUARANTY ⬦⟺5—ILLEGALITY OF ORIGINAL OBLIGATION—LIABILITY OF GUARANTORS.**

The guarantors of a contract illegal as attempting to destroy competition are not liable; it being necessary to rely on the original illegal contract in order to recover.

**4. CORPORATIONS ⬦⟺237—RECEIPT OF MONEY BY CORPORATION — LIABILITY OF STOCKHOLDERS.**

That a corporation had received part of the money sued for and that defendants were stockholders therein would not make defendants liable under the common counts in assumpsit; the corporation being a distinct entity from the stockholders.

---

⬦⟺For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from Circuit Court, Covington County; A. B. Foster, Judge.

Assumpsit by the Southern Cotton Oil Company against W. M. Knox and W. N. Rushton. Judgment for defendants and plaintiff appeals. Transferred from Court of Appeals under section 6, Acts 1911, p. 449. Affirmed.

The following are the counts of the complaint on which the trial was passed:

(1) Plaintiff claims of the defendants the sum of $696.52, with interest thereon, for that on, to wit, July 18, 1914, the defendants (for a valuable consideration) agreed with the plaintiff that they would be responsible for failure on the part of the ginner of the Farmers' Gin & Compress Company, a corporation, to make out correctly certain cash seed tickets used by said corporation in the purchase by it of cotton seed for plaintiff during the season of 1914 and 1915, or for any errors that said ginner made in the handling of said tickets. Plaintiff alleges that during, to wit, the fall and winter of 1914, said corporation's ginner, one W. M. Windham, made out, to wit, a large number of said cash seed tickets, the blank form for which had been furnished by plaintiff to said corporation, to be used by it in the purchase of seed by plaintiff as aforesaid, and which were payable at the First National Bank of Andalusia to divers and sundry persons from whom said corporation had not bought the seed for which said tickets purported to be given in payment, said tickets having been subsequently cashed by plaintiff, said sum being due and unpaid.

(2) Plaintiff claims of the defendants the other and further sum of $150, with interest thereon, for that on, to wit, July 18, 1914, plaintiff made a contract with the Farmers' Gin & Compress Company, a corporation, under and by the terms of which the said corporation agreed to purchase cotton seed for plaintiff during the season of 1914 and 1915, at and for a salary of $850, with the understanding that, if said corporation during said season purchased 500 tons or more of seed, plaintiff was to pay said corporation an additional sum of $150. Plaintiff alleges that the defendants on said date, for a valuable consideration, agreed with the plaintiff that they would become responsible for any salary advanced by plaintiff to said corporation that might not be worked out by it under the said contract. Plaintiff alleges that during the said season it advanced to said corporation the sum of to wit, $1,000, as salary, and that during said season the said corporation did not purchase for plaintiff under said contract as much as 500 tons of cotton seed; said sum of $150 being unpaid.

The following is the contract referred to:

"Farmers' Gin & Compress Company, Andalusia, Alabama—Gentlemen: Referring to our conversation with your committee, Messrs. W. M. Knox and W. N. Rushton, in regard to your purchasing cotton seed for us this season at your gin in Andalusia, we understand the trade to be as follows: You are to have your ginner and other men in your employ connected with this gin to use their entire influence and efforts in buying seed for us at prices named by us which shall be the price we are paying at our gin and for wagon seed at the mill. You are to determine the weight of the seed from the cotton ginned by the same method that we use at our gin. You are to make the same meal trade at your gin that we make at ours. You are to furnish the house and keep same in good condition under lock. You are to use all diligence and care in purchasing seed of good quality without trash or dirt. You are to use such forms as furnished by us so as to make us a correct report of seed purchased. You are to use the cash seed tickets which are payable at the First National Bank, and you are to instruct your ginner the necessity of making out these correctly, and his failure to do this or any errors that he makes in handling these tickets you and each of you are to be responsible for such.

"As salary for your purchasing cotton seed for us, season 1914–1915 we are to pay you $850, but it is understood, should you purchase 500 tons or more, we are to pay you an additional sum of $150. We are to load the seed on cars or allow you 20 cents per ton for loading charges or should it become necessary to dray the seed from your plant to mill, you are to furnish the teams for the draying, and we will allow you 40 cents per ton.

"The two gentlemen named on your committee and whose names are signed to this paper shall become responsible for any salary advanced that might not have been worked out. It is distinctly understood that this contract does not become finally binding until ratified by S. J. Cassels, district manager, Montgomery, Alabama.

"Yours truly,

"The Southern Cotton Oil Company,
"F. H. Fielder, Manager.

"Accepted: W. M. Knox, W. N. Rushton, Committee.

"Approved: S. J. Cassels, District Manager."

A. R. Powell, of Andalusia, for appellant. Powell, Albritton & Albritton, of Andalusia, for appellees.

SAYRE, J. This case went to the jury on counts 1 and 2 the general issue, and special pleas 6 and 7.

Plaintiff, appellant, sued for a breach of the contract which will appear in the report. Plaintiff and the Farmers' Gin & Compress Company, a corporation, were principals to the contract. Defendants had guaranteed its performance by the Gin & Compress Company. In count 1 plaintiff alleged, in substance, that the Gin & Compress Company's ginner had fraudulently issued a large number of the seed tickets, provided for in the contract, for which no cotton seed had been purchased, and that these tickets had been subsequently cashed by plaintiff in ignorance of the facts. In the second count the claim was that the gin company had in like manner been paid $150 more than it had earned under its contract, in that it had not purchased as much as 500 tons of seed during the season. Special plea 6 alleged with circumstantial detail that the contract in ques-

tion was null and void because the parties had entered thereinto for the purpose of fixing the price of cotton seed in Andalusia and vicinity in violation of section 7579 of the Code. Plea 7 alleged with similar detail a violation of section 7581 of the Code, which undertakes to punish any person or corporation which shall destroy, or attempt to destroy, competition in the sale of any commodity.

There was evidence going to show that plaintiff had a contract with J. A. Prestwood similar to that with the Gin & Compress Company; that plaintiff, Prestwood, and the gin company operated gins at Andalusia and were engaged in buying cotton seed; that plaintiff was engaged in manufacturing cotton seed products, while Prestwood and the gin company purchased seed for resale; that Prestwood and the corporations named purchased the large bulk of the seed sold at Andalusia, though there were two or three trading firms, not ginners, who purchased seed in a small way; that there were gins where seed was purchased at a number of towns in the neighborhood, ranging from 5 to 12 miles away. There was also evidence from which the jury may have inferred that the contracts between plaintiff, on the one hand, and Prestwood and the gin company, on the other, were kept under cover to this extent at least, that persons who sold their seed to Prestwood and the gin company were not given to understand and did not know that they were selling in fact to the plaintiff. This, along with the terms of the contract, is a shorthand rendition of the evidence on the issues raised by the special pleas. Appellant insists that neither the facts alleged in the pleas nor the evidence in support thereof warranted the conclusion that the contract violated either of the sections of the Code to which reference has been made.

[1, 2] After stating the facts, we hardly need to do more than refer to the decision and opinion of this court in Arnold v. Jones Cotton Co., 152 Ala. 501, 44 South. 662, 12 L. R. A. (N. S.) 150. There is no need to repeat what was there said. Our judgment upon due consideration is that both the allegations of the pleas and the evidence in support thereof justified the rulings and findings as to law and fact in the trial court. The court held on the facts pleaded and the jury were authorized to find from the evidence that the contract between the parties was entered into with sinister purpose, and operated as an unlawful restriction upon competition in the purchase, and necessarily therefrom in the sale, of cotton seed at Andalusia, and was punishable under either section 7579 or 7581 of the Code, which, in those features involved in this cause, come to much the same thing. As for any action sought to be maintained on the contract, the law will leave the parties severely alone, to abide the consequences of their illegal conduct. Lea v. Cassen, 61 Ala. 312.

[3, 4] Appellees were parties to the contract in that they undertook to guarantee the gin company's performance of its engagement in all respects, and they are sued alone; but we do not see that they stand on any worse footing than the other parties. Appellant was also a party, and its suit is prosecuted in necessary reliance on the original illegal contract as much so as if it had been brought against the gin company. The contract is of the essence of the cause of action stated in counts 1 and 2 and sought to be established in the proof. It is one, inseverable, and altogether illegal. For this reason no suit could be maintained upon it. Nor could any action be sustained against these appellees on the common counts, this for the reason that they were not shown to have received any of the money which appellant was by fraud or mistake induced to pay; the fraud being charged against an agent of the gin company. The gin company, a corporation, had received a part of the money sued for, and defendants were stockholders in that company, but it was a distinct entity from its stockholders, and must be considered separate and apart from them. Moore & Handley Hdw. Co. v. Towers Hdw. Co., 87 Ala. 206, 6 South. 41, 13 Am. St. Rep. 23.

The rulings in the trial court, charges to the jury included, were all in conformity with what we have said.

Affirmed.

ANDERSON, C. J., and GARDNER and THOMAS, JJ., concur.