(97 South. 219)

**RUDISILL SOIL PIPE CO. et al. v. EASTHAM SOIL PIPE & FOUNDRY CO.**
(7 Div. 410.)

(Supreme Court of Alabama. June 30, 1923.)

1. **Usury ☉35—Pledge of bonds at less than face value not usury.**

No usury exists where a corporation in good faith pledges its bonds at less than the face value to secure its debt.

2. **Usury ☉16, 69—Usury taints subsequent transactions; novation of debt not usury.**

For usury to exist, the original transaction must be tainted with usury, and in such case the infirmity adheres to all subsequent transactions, having the effect of a device for evading the usury statute, but this is not true as to bona fide novation of the debt.

3. **Landlord and tenant ☉39—Lease held not to require lessee to apply profits of lessee on bonded indebtedness of lessor.**

Lease stipulation that lessee "may, at its option, elect" to pay over its profits to apply on lessor's bonded indebtedness, *held* not an agreement that lessee "must" so pay such profits.

4. **Mortgages ☉335—Mortgagee may foreclose irrespective of hardship.**

That hardship results from foreclosure, or that the motive of bondholders is mercenary, is immaterial as respects their right to exercise the power of sale pursuant to its terms.

5. **Mortgages ☉335—Foreclosure cannot be enjoined where one bond is in default.**

Trustee in mortgage cannot be enjoined from foreclosing for the benefit of all the bondholders so long as there is one bond in default, and the holder thereof is not responsible or chargeable with the default.

6. **Corporations ☉309(6)—That one of the holders of bonds of lessor corporation was an officer held not to prevent enforcing bonds by foreclosure for more than amount at which they were acquired.**

Where a corporation, not doing a successful business, leased its plant and properties to another corporation, the fact that one of the holders of bonds of the lessor corporation was an officer thereof *held* not to prevent the bondholders from enforcing the bonds by foreclosure for more than the amounts at which the bonds were acquired by them.

7. **Corporations ☉215, 325—Directors and stockholders not liable for corporation's nonfeasance.**

Directors or stockholders who have failed to discharge their duty to the corporation, as by their failure to make the corporation pay its debts, are not held to pay its debts and are not liable for its nonfeasance.

8. **Pledges ☉58(3)—Pledgees of corporate bonds may foreclose.**

Where corporation bonds were negotiable, the pledgees thereof had the authority to foreclose, or to require foreclosure by the mortgage trustee, as would an outright holder of the bond.

9. **Corporations ☉482½—On redemption, value of personal property treated as payment on mortgage.**

Where real and personal property of a corporation was sold on foreclosure, on redemption the value of the personal property would be estimated and treated as a payment on the mortgage debt.

10. **Mortgages ☉338—Purchaser at sale takes subject to sale being set aside.**

Where bill to enjoin foreclosure is filed before the sale, any purchaser at such sale would take title subject to the sale being set aside by a court of equity.

☉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from Circuit Court, Calhoun County; A. P. Agee, Judge.

Bill by the Eastham Soil Pipe & Foundry Company against the Rudisill Soil Pipe Company, H. B. Rudisill, W. C. Wilson, J. M. Eastham, and the First National Bank of Anniston, Ala., to enjoin foreclosure of a deed of trust, for an accounting, etc. From a decree denying motion to dissolve temporary injunction, respondents appeal. Reversed and remanded.

Knox, Acker, Sterne & Liles, of Anniston, and W. B. Harrison, of Birmingham, for appellants.

No usury exists where a corporation pledges its bonds as collateral security for debt less than the face of the bonds. Nelson v. Hubbard, 96 Ala. 238, 11 South. 428, 17 L. R. A. 375; Dexter v. McClellan, 116 Ala. 37, 22 South. 461. Where an option is granted to a party, he has an absolute right and power of choice at his own will. Montgomery v. Hundley, 205 Mo. 138, 103 S. W. 527, 11 L. R. A. (N. S.) 122; Levy v. Rothe, 17 Misc. Rep. 402, 39 N. Y. Supp. 1057; Arthur v. Nelson, 1 Dem. Sur. (N. Y.) 337; Wells Fargo Co. v. Robinson, 13 Cal. 133. Foreclosure would not cause complainant to lose the value of its personal property, for, after foreclosure of a mortgage covering real and personal property, the value of the personalty will be estimated and applied to the debt, and the mortgagor permitted to redeem by paying the balance. Johnson v. Davis, 180 Ala. 143, 60 South. 799; Dozier v. Farrior, 187 Ala. 181, 65 South. 364; Dinkins v. Latham, 202 Ala. 101, 79 South. 493; Byrd v. Hickman, 167 Ala. 351, 52 South. 426; Bullock v. Coleman, 136 Ala. 610, 33 South. 884; L. & N. R. Co. v. Shepard, 126 Ala. 416, 28 South. 202; Mobile Co. v. Robertson, 65 Ala. 382; Allen v. Mutual Co., 101 Ala. 574, 14 South. 362; Lee v. Cochran, 157 Ala. 311, 47 South. 581. A supposed sinister motive on the part of the bondholders will not deprive them of the right to foreclose. 3 Fletcher, Corp. 2360; Hodges v. Coleman, 76 Ala. 103; McInnes v. McInnes Brick Co. (N. J. Ch.) 38 Atl. 186; McFadden v. Mays' Landing R. Co., 49 N. J. Eq. 176, 22 Atl. 932; Guardian Tr. Co. v. White Co. (C. C.) 109 Fed. 523; Continental Co. v. Allis-Chalmers Co. (D. C.) 200 Fed. 600; Land Title Co. v. Asphalt Co., 127 Fed. 1, 62 C. C. A. 23; Dickerman v. Northern Tr. Co., 176 U. S. 181, 20 Sup. Ct. 311, 44 L. Ed. 423. Having contracted with the Rudisill Company, complainant is estopped to deny its corporate existence for the purpose of holding its shareholders liable. Owensboro Wagon Co. v. Bliss, 132 Ala. 253, 31 South. 81, 90 Am. St. Rep. 907; First Nat. Bank v. Henry, 159 Ala. 375, 49 South. 97. A corporation is a distinct entity from the individuals who compose it, and is not affected by the personal rights, obligations, etc., of its stockholder. Moore-Handley Hdw. Co. v. Towers, 87 Ala. 206, 6 South. 41, 13 Am. St. Rep. 23; Stone v. Walker, 201 Ala. 130, 77 South. 554, L. R. A. 1918C, 839; C. R. & Banking Co. v. Smith, 76 Ala. 572, 52 Am. Rep. 353; Natl. Park Bank v. Remsen, 158 U. S. 337, 15 Sup. Ct. 891, 39 L. Ed. 1008; Sou. Cot. Oil Co. v. Knox, 202 Ala. 694, 81 South. 656; Richmond C. Co. v. Richmond N. Co., 68 Fed. 105, 15 C. C. A. 289, 34 L. R. A. 625; Ulmer v. Lime Rock R. Co., 98 Me. 579, 57 Atl. 1001, 66 L. R. A. 387; Peterson v. Chicago Co., 205 U. S. 391, 27 Sup. Ct. 513, 51 L. Ed. 841; U. S. v. Del. & Hudson, 213 U. S. 366, 29 Sup. Ct. 527, 53 L. Ed. 836; Pullman Co. v. Mo. Pac., 115 U. S. 596, 6 Sup. Ct. 194, 29 L. Ed. 499. The pledgee of bonds has the same right and authority to foreclose as an outright holder of the bonds. Eastman had a right to purchase the bonds of complainant below par. 19 R. C. L. 522; 21 R. C. L. 666; Bank of Piedmont v. Smith, 119 Ala. 57, 24 South. 589; Coats v. Mutual Co., 174 Ala. 565, 56 South. 915; People's Tr. Co. v. Mt. Waldo Co., 117 Me. 507, 105 Atl. 113; O'Conner M. Co. v. Coosa F. Co., 95 Ala. 614, 10 South. 290, 36 Am. St. Rep. 251; Lagarde v. Anniston Co., 126 Ala. 496, 28 South. 199; Cottingham v. Moore, 128 Ala. 209, 30 South. 784; McIntyre v. Ajax Co., 28 Utah, 162, 77 Pac. 613. Courts of equity are slow to enjoin foreclosures, and will do so only upon clear and strong grounds. Vaughan v. Marable, 64 Ala. 60; Glover v. Hembree, 82 Ala. 324, 8 South. 251; Fair v. Cummings, 197 Ala. 131, 72 South. 389. The injunction should be dissolved upon the sworn denials of the answer and affidavits. Consumers' Co. v. Yarbrough, 194 Ala. 482, 69 South. 897; Profile Cot. Mills v. Ala. Water Co., 189 Ala. 189, 66 South. 50; Woodward v. State, 173 Ala. 7, 55 South. 506; Ford v. Sou. Motor Co., 208 Ala. 170, 93 South. 902.

J. P. Whiteside, of Anniston, and Erle Pettus, of Birmingham, for appellee.

The transaction is a loan of money by Eastham, Rudisill, and Wilson to complainant at a usurious rate of interest, and they are entitled to be paid only the amount loaned. Miller v. Bates, 35 Ala. 580; 1 Stew. (Ala.) 391; 39 Cyc. 943. The lease contract creates an obligation to apply profits on the bonded indebtedness. Woods v. Postal Tel. Co., 205 Ala. 236, 87 South. 681; 9 Cyc. 975. If foreclosure is permitted, without an accounting first had, appellee will lose its personal property; personal property, when sold at judicial sale, is not subject to redemption. Brown v. Bell, 206 Ala. 182, 89 South. 659. While it is held that the corporation is a separate entity from its stockholders, this legal fiction will not be allowed to an extent contrary to the policy of the law. 14 C. J. 59; Keokuk E. R. & P. Co. v. Weisman, 146

Iowa, 679, 126 N. W. 61. The complaint is entitled to an accounting. Francis v. Gilreath Co., 180 Ala. 338, 60 South. 919; Hall v. McKeller, 155 Ala. 508, 46 South. 460. The bondholders, not being the legal owners of the bonds, cannot foreclose the mortgage. The authorities cited by appellants to the contrary are inapt. Officers of an insolvent corporation cannot purchase the debts of their company at a discount, and enforce the same for face value. Lagarde v. Anniston Co., 126 Ala. 496, 28 South. 201; De Bardeleben v. Bessemer Co., 140 Ala. 621, 37 South. 511; 14a C. J. 134.

THOMAS, J. The bill prayed injunction to stay foreclosure of a mortgage securing an issue of bonds, and for an accounting. The temporary injunction was granted. Respondents filed verified answer, supported by affidavits, and moved to dissolve. Counter affidavits were filed for complainant; and on submission thereon the motion to dissolve was denied, from which the appeal was taken.

The trial judge classified the insistences of complainant as follows: (1) That the acquisition of the bonds constituted an usurious transaction; (2) the lease obligates the Rudisill Soil Pipe Company to apply profits to discharge the interest on the bonds, and default in this would preclude its directors from foreclosing their bonds; and (3) that Rudisill, Wilson, and Eastham, "by virtue of Eastham being an officer of the Eastham Company, can enforce the bonds only for the amount at which they were acquired." The respective corporations will hereafter be referred to as the Eastham Company and the Rudisill Company.

The insistence that there was usury under the alleged transactions on the part of Rudisill, Wilson, and Eastham is that the Eastham Company owed Sloss-Sheffield Company $27,000, secured by a like amount of bonds of the Eastham Company; that Rudisill and Wilson, for $13,500, purchased that indebtedness and took an assignment thereof with collateral attached. It is averred that such purchasers agreed with the Eastham Company that they would lend it $13,500 with which to pay Sloss-Sheffield Company, and, failing in this, they compromised said indebtedness with the latter company for the sum indicated; and it is averred that the Eastham Company, as security or in repayment, gave Rudisill and Wilson its bonds for double the amount of the loan. The bill being sworn to, this charge as to the loan of $13,500 to the Eastham Company is only supported by said verification of the bill, and not by the affidavits. The statements contained in the affidavits are that such was not the fact; the statement of the secretary and treasurer of the Sloss-Sheffield Company, and that of Rudisill and of Wilson, stating the facts of the transaction, deny the fact of such loan. The Eastham Company, or any of its officers, were not shown to have agreed with or conferred with the Sloss-Sheffield Company about compromising and extinguishing its debt. The affidavits of Rudisill and Wilson state that the subject of making a loan to the Eastham Company not only was not agreed upon as alleged, but deny that the subject was ever discussed between them. The officers of the Eastham Company fail to state that such a loan was ever mentioned or considered with Rudisill and Wilson.

There are affidavits to the effect that Sloss-Sheffield Company did not extinguish its indebtedness—merely sold and assigned its claim to Rudisill and Wilson, and delivered therewith its evidences of indebtedness, original and collateral. Mr. Angle, who acted for the Eastham Company in the negotiations with Rudisill and Wilson, testified that he "never heard of such a thing (a loan) until the bill was filed." The answer and affidavits of respondents are to the effect that the acquisition of bonds on the part of Rudisill and Wilson was mentioned by the directors of the Eastham Company only in an incidental way, by an inquiry of what Rudisill and Wilson expected to realize out of the contract, and the reply—to buy bonds at a discount and to profit by operating the leased plant. It is asserted by appellants that the same is true with reference to the bonds acquired by Rudisill and Wilson from the Alabama Company and the Whiting Company, as well as the bonds acquired from the First National Bank of Anniston.

[1] It is settled that no usury exists where a corporation in good faith pledges its bonds at less than the face value as collateral security to secure its debt, the primary duty being to pay the debt, which releases the collateral. If payment is not made, the fact that collaterals in excess of the indebtedness may be sacrificed does not relate to the inception of the loan and taint it with usury, when no such intent or effect was the result of the loan when made. In Nelson v. Hubbard, 96 Ala. 238, 250, 11 South. 428, 17 L. R. A. 375, it was held that bonds may be bona fide pledged in excess of corporate debt, in the absence of statutory and constitutional provisions, if not done in fraud of corporate rights. The pledge of bonds of the face value of $105,000 to secure a debt of $85,000 was the subject of discussion and upheld in Dexter v. McClellan, 116 Ala. 37, 22 South. 461, as not a fictitious issue or disposition of bonds within the prohibitions of the Constitution.

[2] It is established that the original transaction must be tainted with usury, and when such is the fact the infirmity adheres to all subsequent transactions, having the effect of a device for evading the usury statute. Not so as to bona fide novation of the debt. Brock v. Clio Banking Co., 207 Ala. 404, 92 South. 805; Id., 204 Ala. 57, 85 South. 297; Blue v. First National Bank, 200 Ala. 129, 75 South. 577; Lewis v. Hickman, 200 Ala. 672,

77 South. 46; Scheussler & Sons v. Heard, 202 Ala. 648, 81 South. 590; Gardner v. Ruffner, 206 Ala. 666, 91 South. 580. The evidence offered in support of averments of usury fails to show that in the original transaction of the loan between the parties—the Sloss-Sheffield Company and the Eastham Company—or that of the acquisition of the note of $27,000 and collateral securing the same, was tainted with usury. To the same effect was the purchase of that note, and collateral securing it, from the former company by Rudisill and Wilson; and the case of Lewis v. Hickman, supra, is without application.

The four main creditors of the Eastham Company in the year 1922 were the Sloss-Sheffield Company, with an indebtedness of $27,000 secured by an equal amount of bonds of the debtor company; the Alabama Company, with an indebtedness of $13,000 secured by $13,000 worth of bonds of said company; the First National Bank of Anniston, with an indebtedness of $26,000 likewise secured; Mr. Eastham, $20,000 (an indebtedness and indorsement for said company) secured by $20,000 of the bonds of the Eastham Company; and there was a general indebtedness of about $5,000 that had not at such time been secured. The negotiations between Rudisill, Wilson, and Eastham, for the lease of the plant, culminated in the contract between the Eastham Company and the Rudisill Company, a new corporation.

The lease contract was of date February 4, 1922, and by which the Eastham Company accepted the Rudisill Company as its lessee, and Rudisill, Wilson, and Eastham were not personally obligated in the matter and were not shown to have been intended by either party to have been so obligated. Rudisill and Wilson purchased from the Alabama and Sloss-Sheffield Companies the indebtedness of the Eastham Company secured by about $40,000 worth of bonds. As the indebtedness was thus shifted, $40,000 of bonds were held by Rudisill and Wilson, and $20,000 by Mr. Eastham, leaving $26,000 held by the First National Bank of Anniston, and $1,000 by the Alabama Power Company. The total indebtedness of outstanding bonds of the Eastham Company at such time was about $87,000; and the bonds ($4,000) held in the treasury under tender (to the Whiting and Moffatt Companies) in October, 1922, after the execution of the lease contract, were accepted. The Alabama Power, the Whiting and Moffatt Companies' bonds were afterwards acquired by Rudisill and Wilson, long after the signing of the lease contract by the Rudisill Company.

It is said of the formation of the Rudisill corporation that the subscribers for its stock were Eastham, Rudisill, Wilson, and Mr. W. P. Acker, each taking one-fourth thereof, and that Rudisill, Wilson, and Eastham constituted its executive officers.

We have observed of the averments of the bill that Rudisill, Wilson, and Eastham, contemporaneously with the incorporation of the Rudisill Company and the execution of the lease, loaned, or agreed to loan, the Eastham Company an amount equal to 50 per cent. of its indebtedness. This charge finds no support in the evidence, outside of the verification in the bill by Mr. Miller; this is repudiated in the affidavits of the several directors, including Mr. Miller. The testimony of the officers of the Sloss-Sheffield Company, and the Alabama Company, handling the transactions, shows that the same did not occur, and were not had with the Eastham Company; that the respective negotiations and communications thereof were of a sale to Rudisill and Wilson of their indebtedness against the Eastham Company. It is further shown that at the time of the Rudisill Company's incorporation there was no understanding or agreement that Mr. Eastham would acquire and hold any bonds, except those securing the Eastham Company's indebtedness to him for money loaned and the several indorsements indicated in the pleading and evidence; that some months thereafter he purchased from the First National Bank of Anniston the Eastham Company indebtedness of about $25,000, which, with the collateral attached, was transferred to him. The affidavit of the president of that bank, verifying its answer, contains a detailed statement of the transaction, and he states, of the transaction, that the "bank simply sold its debt at fifty cents on the dollar to J. M. Eastham."

At this juncture it is material to note that thereafter said First National Bank held one bond of $1,000, securing an indebtedness to it, that was never sold, transferred, or agreed to be so disposed of to Rudisill, Wilson, or Eastham; that the same was held by hypothecation with the bank "as security in its own right"; that Rudisill, Eastham, or Wilson have no interest or ownership in such bond. The lease was signed in behalf of the Rudisill Company by its president, and in behalf of the Eastham Company by its vice president. The testimony impresses us that before a consummation of this transaction Mr. Eastham had ceased to act for and with the Eastham Company, for the reason that he had large adverse interests in his personal holdings. The judgment and advice to the Eastham Company was that of its other governing officials. Thus the case was not brought within De Bardeleben v. Bessemer Co., 140 Ala. 621, 37 South. 511, or Lagarde v. Anniston Co., 126 Ala. 496, 28 South. 199, cases dealing with resulting trusts.

[3] The lease contract in evidence is carefully drawn, and is its best interpreter. The suggestion or insistence is that Rudisill, Wilson, and Eastham and the Rudisill Company are one and the same parties in interest, and that there was an identity between them in the transaction in question.

'We are not impressed of this from a consideration of the pleadings and the affidavits. The lease contract contained significant stipulation as bearing upon a waiver of default or right of foreclosure. The two clauses contained therein, stipulating as to the paying over of profits, are sections 7 and 8 as follows:

"7. As often as profits shall accrue in such amount that, in the judgment of the lessee, the said lessee can spare such funds from its operating capital, the lessee may, at its option, elect that said sums be paid over to the company upon condition that the same be used for the payment of interest on the bonds and the retirement of outstanding bonds, in accordance with the option retained in said bonds. Upon making each and every such payment the lessee shall have the right to require of the lessor that it contemporaneously call the corresponding amount of bonds.

"8. All profits which the lessee shall earn which shall not have been applied on bonded indebtedness or retirement of bonds shall be retained to meet emergencies or losses of subsequent years, and shall be accounted for at the end of the leasehold period."

The effect of such stipulations—the election to pay over profits as so indicated in the contract, and that profits not so paid over shall be retained, or used to meet emergencies or losses, until the end of the term, etc.—did not create an express or implied obligation to apply profits on the bonded indebtedness. If interest accruing on the bonds was not paid, the bondholders had the right to foreclose on account of default of the mortgagor, unless such mortgagor had an agreement not to foreclose. No such agreement is specifically averred in the bill, and the affidavits show that no such stipulation was made. The Rudisill Company held no bonds of the Eastham Company, and, if agreement was made by it not to foreclose the bonds for failure of the payment of interest to the "end of the leasehold period," it would not have affected the right of a bondholder. An agreement to this effect is not contained within the terms of the lease contract showing the stipulations set out; that contract expressly stipulating that "in the judgment of the lessee," etc., such party "*may,* at its option, elect" to pay. (Italics supplied.) This is not the equivalent of the stipulation that such party *must* pay. See the difference between "optional" and "option" contained in Levy v. Rothe, 17 Misc. Rep. 402, 39 N. Y. Supp. 1057.

It cannot be said that "no harm will result" to respondents, as to one of them—the First National Bank of Anniston—and thus is the case different from that presented in the cases of Toney v. Burgess, 208 Ala. 55, 93 South. 850, and Rice v. Davidson, 206 Ala. 226, 89 South. 600.

[4] If there is hardship in foreclosure, if that right exists, it is immaterial, since the power of sale in the mortgage is a part of the security that may be exercised by the mortgagee pursuant to its terms, "though hardship result to those whose title is subject to the mortgage." Dinkins v. Latham, 202 Ala. 101, 106, 107, 79 South. 493. In Byrd v. Hickman, 167 Ala. 351, 360, 52 South. 426, this court said, of contracts generally, that if it "offends no law may be peculiar and may bear grievously upon one of the parties thereto, yet we know of no judicial right to avoid it because the accepted terms are onerous." Lee v. Cochran, 157 Ala. 311, 47 South. 581; Bullock v. Coleman, 136 Ala. 610, 33 South. 884; L. & N. R. R. Co. v. Shepard, 126 Ala. 416, 28 South. 202; Mobile Bldg. & Loan Assn. v. Robertson, 65 Ala. 382. The motive of bondholders, however mercenary, may not deprive them of the right of foreclosure as secured by the contract, for the reason stated by Judge Stone of the right of contract. He said:

"* * * *. Can human tribunals set aside a transaction, lawful in itself, because the actors had an evil mind in doing it? Can there be fraud in doing a lawful act, even though it be prompted by an evil motive, or badges of fraud, which injures no one and can injure no one, and withholds from no one anything that he can lay claim to? 'Fraud does not consist in mere intention, but in intention carried out by hurtful acts.'" Hodges Bros. v. Coleman, 76 Ala. 103, 119.

[5] Under the undisputed evidence, the First National Bank of Anniston holds a bond of $1,000, on which the interest is in default, and the unqualified right of foreclosure is secured to it by a contract that is unimpeached. There is no pretense in believing that the First National Bank is in any way responsible or chargeable with any default of the Rudisill Company, or of Wilson, Rudisill, Eastham, or Angle. Whatever right the Eastham Company might have to sue Eastham, Rudisill, and Wilson for an alleged wrong in the matter of injury, the trustee in the mortgage cannot be enjoined from foreclosing for the benefit of all the bondholders, so long as there is one bond in default, and the holder of that bond is not responsible for or chargeable with the default. When the foreclosure is had at the instance of the First National Bank, on its bond in default, it is for the benefit of all bondholders. It is not insisted that the doctrine of de minimis non curat lex will defeat the contract right of foreclosure.

[6] The third reason assigned by the chancellor, and a ground on which the equity of the bill is said to rest, is that, because Eastham was an officer of the lessor company, Rudisill, Wilson, and Eastham cannot enforce by foreclosure the payment of the amounts held by them, or for more than the amount at which they acquired the bonds. This conclusion is rested, as though the Eastham Company had leased directly to Eastham, Rudisill, and Wilson. Such is not true, since the latter are merely stockholders and officers of a corporation that is a party to

the lease. This is not the case where individuals are prevented by contract obligation from incorporating and doing indirectly what they could not do directly—by and through a dummy, decoy, or shadow corporation, for the purpose of consummating such end. As we have indicated, the Eastham company was not conducting a successful business, and approved the offer of a lease of its plant and properties to the Rudisill Company, which was accepted and evidenced by the contract containing the provisions we have noted.

The cases of Owensboro Wagon Co. v. Bliss, 132 Ala. 253, 257, 31 South. 81, 90 Am. St. Rep. 907, and First National Bank v. Henry, 159 Ala. 367, 375, 49 South. 97, were where de facto corporations were for consideration, or where corporations had contracted with each other as such, and were estopped to deny corporate existence. In Moore & Handley Hdw. Co. v. Towers, 87 Ala. 206, 211, 212, 6 South. 41, 13 Am. St. Rep. 23, Moore and Handley, as a partnership, had become obligated by contract not to handle a certain kind of plow, and to avoid this obligation they later incorporated the Moore & Handley Hardware Company, which corporation proceeded to sell the identical plow in violation of the contract obligation of Moore and Handley, as a partnership; held, there was no identity between the corporation and its incorporators, saying:

"The general doctrine is well established, and obtains both at law and in equity, that a corporation is a distinct entity, to be considered separate and apart from the individuals who compose it, and is not to be affected by the personal rights, obligations and transactions of its stockholders; and this, whether said rights accrued, or obligations were incurred, before or subsequent to incorporation."

There was no allegation, in the case of Moore & Handley Hdw. Co. v. Towers, supra, of fraud against the corporation or its shareholders, and the implication of the fraudulent effect of the act complained of was denied. The justice observed that it was not shown to be a mere "paper corporation" to cover a joint adventure in which the promoters are partners in intention, and that they had resorted to this fiction of corporate existence for the purpose of evading obligations they had assumed as individuals. If these things had appeared in the case, it was declared that, when the ends of justice required, the court would look beyond the fictions of corporate entity and "hold the corporation to a discharge of the liabilities resting on its members. * * * But, in the absence of fraud, 'no authorities have gone the length of holding that any contract made with individuals, exclusively upon individual credit, will become the contract of any future corporation that may be formed for the more convenient management and use of the benefits of it.' L. R. & Ft. S. R. Co. v. Perry,

37 Ark. 164; s. c. 44 Ark. 382." The above expressions from Moore & Handley Hdw. Co. v. Towers, supra, are quoted, with approval, in Stone v. Walker, 201 Ala. 130, 131, et seq., 77 South. 554, L. R. A. 1918C, 839. The well-established distinction made, between the instant case and Moore & Handley Hdw. Co. v. Towers, supra, is that in the latter case complainant dealt with Moore and Handley as individuals, and subsequently sought to enjoin the corporation organized by such individuals, which was not permitted. In the instant case complainant dealt with the corporation and now seeks to defeat the obligation, or limit the contract rights of the individual bondholders, as being subject to the lease contract with its terms extended by construction. This may not be done. Appellants' counsel advert to the fact that when the lease was executed, $31,000 of the bonds of the Eastham Company were held by the First National Bank of Anniston, having no connection with Eastham, Rudisill, and Wilson as individuals, or with the Rudisill Company, as the lessee of the plant. Aside from this the record shows that "W. P. Acker is one of the stockholders of the Rudisill Soil Pipe Company and owns no bonds and has no connection therewith"—with the matters now urged as giving equity to the bill.

[7] The fact is well established that directors of a corporation may not participate in a tort perpetrated through the agency of a corporation, or in a fraudulent injury to another, without being civilly responsible. However, there is no extension of this rule that would hold directors or stockholders of a corporation, who had failed to discharge their duty to the corporation, to pay its debts or be liable for its nonfeasance. This obligation is insisted, as against Rudisill, Wilson, and Eastham, as directors of the Rudisill Company, because they did not cause the corporation to pay over profits to the Eastham Company. As such directors they cannot be held personally liable at law and in equity for failing to pass a resolution directing the corporation to make the desired payments. Southern Cotton Oil Co. v. Knox, 202 Ala. 694, 81 South. 656; Central R. R. & Banking Co. v. Smith, 76 Ala. 572, 52 Am. Rep. 353; Richmond Co. v. Richmond N. Co., 68 Fed. 105, 15 C. C. A. 289, 34 L. R. A. 625; Ulmer v. Ulmer Lime Rock Co., 98 Me. 579, 57 Atl. 1001, 66 L. R. A. 387, 394.

In Sampson v. Fox, 109 Ala. 662, 19 South. 896, 55 Am. St. Rep. 950, it was sought to impute to the president and stockholders of the corporation its default in failing to pay a designated indebtedness. Reversing the lower court, it is said:

"We cannot assent to the theory upon which the court below based the judgment. * * * The principle upon which the court seems to have proceeded is that, when the dual obligation to pay and the duty and authority to demand

and receive payment of a debt coexists in the same person, the law presumes, and conclusively presumes, the debt to be paid. But there must be concurrence and coexistence of the legal obligation to pay and of the authority and duty to demand and receive payment. * * * The obligation to pay the debts of the Electric Light & Water Company was never assumed by or rested on Carr; nor had he authority to receive payment of them. The obligation to pay was the obligation of the Water Company, and not in any proper or legal sense the obligation of any of the stockholders, or officers, or agents."

Liability of the directors of a corporation, in certain forms of action, to corporate creditors, has been the subject of discussion by text-writers and the courts. Mr. Thompson (Corporations, § 1300, note 46) concludes the matter by saying:

"* * * It is well settled that for their mere nonaction, for their failure to make the corporation pay its debts, or their failure to show that it is paying its debts, or for any other form of mere nonfeasance. the directors are not liable to corporate creditors."

See, also, O'Conner M. & M. Co. v. Coosa Furnace Co., 95 Ala. 614, 10 South. 290, 36 Am. St. Rep. 251; Wilson v. Stevens, 129 Ala. 630, 29 South. 678, 87 Am. St. Rep. 86; Force v. Age-Herald Co., 136 Ala. 271, 33 South. 866, where there was disaffirmance of corporate acts brought about by a dual directorate, not where there was a mere nonfeasance charged.

[8] The bonds of the Eastham Company were negotiable. The pledgees thereof have the authority to foreclose, or to require foreclosure by the trustee of the mortgage, as would an outright holder of the bond. In Coats v. Mutual, etc., Co., 174 Ala. 565, 56 South. 915; Bank of Piedmont v. Smith, 119 Ala. 57, 24 South. 589, it was decided that the pledgee of a negotiable instrument may sue thereon; if he may do this, the same right would authorize enforcing the security pledging the payment.

[9] No irreparable injury will result from the foreclosing of the mortgage; the parties respondent to the bill are solvent and the foreclosure sought is of real and personal property; on redemption the value of the personal property will be estimated and treated as a payment on the mortgage debt. Dozier v. Farrior, 187 Ala. 181, 184, 65 South. 364; Johnson v. Davis, 180 Ala. 143, 146, 60 South. 799.

[10] In the cases of Vaughan v. Marable, 64 Ala. 60, 65, and Glover v. Hembree, 82 Ala. 324, 8 South. 251, observation was contained to the effect that courts of equity are slow to enjoin foreclosure, and will do so only upon clear and cogent grounds. The bill having been filed before the sale, any purchaser at such sale would take title subject to the sale being set aside by a court of equity. Fair v. Cummings, 197 Ala. 131, 72

South. 389. After a careful consideration of the submission on pleadings and proof, we are of opinion that the injunction should be dissolved upon the sworn denials contained in the answer and affidavits supporting the same. Ford v. Southern Motor Co., 208 Ala. 170, 93 South. 902; Consumers' C. & F. Co. v. Yarbrough, 194 Ala. 482, 491, 69 South. 897; Profile Cotton Mills v. Calhoun Water Co., 189 Ala. 181–191, 66 South. 50; Woodward v. State, 173 Ala. 7, 13, 55 South. 506.

We are of opinion that the lower court erred in overruling appellants' motion to dissolve the temporary injunction; the decree of the circuit court, in equity, is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.