14 So.2d 129

**BERRY v. BANK FOR SAVINGS AND TRUSTS.**

**6 Div. 67.**

Supreme Court of Alabama.

May 20, 1943.

Rehearing Denied June 30, 1943.

Hugh A. Locke, of Birmingham, for appellant.

Beddow, Ray & Jones, of Birmingham, for appellee.

LIVINGSTON, Justice.

Suit on a promissory note by the Bank for Savings and Trusts, a corporation (appellee), hereinafter called the bank, against E. P. Berry, defendant in the court below and appellant here.

Defendant entered a plea of the general issue in short by consent with leave, etc. The evidence was taken orally and the cause submitted to the trial court without a jury. There was a general finding and judgment for the bank for $6,517.43.

During the year 1936 and through the year 1939, Smith and Berry, a partnership composed of W. T. Smith and Joseph A. Berry, were engaged in what was termed the commercial refrigeration business, that is, selling and installing refrigeration machinery and equipment. The partnership commenced to do business with the bank in 1936. Monthly installment notes or lease sale contracts taken by the partnership for the sale and installation of refrigeration equipment were handled by the bank in the following manner: The notes or contracts were indorsed by Smith and Berry and delivered to the bank; six per cent was deducted from the face of the notes as interest; ten per cent was deducted from the face of the notes and deposited with the bank to the credit of Smith and Berry in what was called a "reserve fund." The balance was paid over to Smith and Berry. The "reserve fund" bore no interest and was left with the bank as collateral security for the payment of the note or contract, out of which it was deducted, and all other obligations then owing or thereafter incurred by the partnership to the bank. The "reserve fund" remained the property of the partnership, but was not withdrawable, except by consent of the bank, so long as the aggregate amount of the notes or contracts indorsed to the bank by the partnership exceeded the "reserve fund." Each individual note or lease sale contract was carried on the books of the bank in the name of the maker, the maker notified of the transfer to the bank, and the payments made directly to the bank by the maker. Prior to the execution and delivery of the note sued on, the partnership and the bank handled approximately ninety notes or contracts in the manner above set out.

In addition to the above, and prior to the execution and delivery of the note sued on,

the bank made certain loans to Smith and Berry to secure the payment of which Smith and Berry gave their notes and assigned to the bank certain notes or lease sale contracts. The amount of these loans and the notes or contracts securing their payment was as follows: A loan of $3,000 evidenced by the note of Smith and Berry, and secured by the assignment of the notes or contract of the State Board of Administration in the amount of $5,025.21; a loan of $2,500, evidenced by the note of Smith and Berry, and secured by the assignment of the note or contract of A. J. Honeycutt in the amount of $3,135; a loan of $1,500, evidenced by the note of Smith and Berry and secured by the assignment of the note or contract of George W. Barber in the amount of $2,075; a loan of $275. evidenced by the note of Smith and Berry, and secured by the assignment of the note or contract of Alex Kartznell in the amount of $333.12. The bank also made a loan to Smith and Berry of $601, secured by a chattel mortgage on three pieces of equipment. Six per cent interest was deducted from the amounts loaned, and from all of the loans, except the $601 loan secured by a chattel mortgage on three pieces of equipment, ten per cent was deducted and placed in the "reserve fund" of Smith and Berry. The bank also made a loan of $7,500 to Smith and Berry, evidenced by their promissory note for that amount and secured by an assignment of what is called the Algernon Blair contract for approximately $11,000. This loan was made at six per cent interest and no part of the amount loaned was put into the "reserve fund."

The bank did not notify the State Board of Administration, A. J. Honeycutt, George W. Barber or Alex Kartznell that the notes or lease sale contracts executed by them had been assigned to the bank as collateral security for loans made to Smith and Berry.

Prior to the execution and delivery of the note, the renewal of which is the note sued on, Smith and Berry collected the money evidenced by the notes or lease sale contracts of the State Board of Administration, George W. Barber and Alex Kartznell, and sold one of the three pieces of equipment of the agreed value of $225, pledged in the chattel mortgage of $601. The money collected and received from the sale of the equipment, was not applied on the loans made to Smith and Berry by the bank, but was, without the knowledge or consent of the bank, misappropriated by Smith and Berry. Upon learning that the funds had been so misappropriated, the bank demanded payment of the loans or that the payment of same be in some manner secured. It was under these circumstances that appellant, E. P. Berry, defendant in the court below, was asked by his brother Joseph A. Berry to sign as co-maker the partnership note, payable to the bank in the sum of $7,500. The note was renewed from time to time and some credits entered thereon. At the time the note was executed and delivered, the notes of Smith and Berry, secured by the assignment of the notes or lease sale contracts of the State Board of Administration, A. J. Honeycutt, George W. Barber, Alex Kartznell and the $601 chattel mortgage, together with the security, were delivered to Smith and Berry; the "reserve fund" of Smith and Berry held by the bank was then approximately $4,700.

The note evidencing the loan of $7,500, secured by the assignment of the Algernon Blair contract, contained the following provision: "Upon the failure of the undersigned to deposit such additional securities when requested and/or to pay this note when due, or declared due, the bank may proceed to realize upon any collateral, may apply, in payment or reduction of the liabilities secured hereby, any balance to the credit of any account or accounts maintained with the bank by the undersigned or any account or accounts maintained with the bank by the undersigned or any such maker, endorser or guarantor."

A loss was sustained on the Algernon Blair contract, and the note to the bank, secured by that contract, not being paid, the bank credited the note of Smith and Berry with the sum of $4,741.23, and charged the same against the "reserve fund."

It is insisted by appellant that the ninety transactions mentioned were loans made by the bank to Smith and Berry, and was one continuous transaction, and that the creation of the "reserve fund" was but a plan or scheme to cloak usury, and that the "reserve fund" should be augmented by the interest charged on these transactions. But we cannot agree.

The evidence is ample to support a finding by the trial court that each trans-

action was separate and distinct from all other transactions, and that each transaction constituted a sale or discount of the notes or lease sale contracts. Admitting for the argument, that the bank realized more than eight per cent on the transactions by subtracting ten per cent from the face of the notes or lease sale contract and holding it in the "reserve fund", if the transaction was a purchase by the bank of the commercial paper of the customers of Smith and Berry, the transaction was not usurious. The mere fact that the bank purchased the notes or lease sale contracts at a discount beyond the legal rate of interest does not constitute the transaction an usurious one. Saltmarsh v. Planters & Merchants' Bank, 17 Ala. 761; Capital City Ins. Co. v. Quinn, 73 Ala. 558; King v. Peoples' Bank, 127 Ala. 266, 28 So. 568; Hart v. Adler, 109 Ala. 467, 19 So. 894; Scott v. Taul, 115 Ala. 529, 22 So. 447; Woodall & Son's v. Peoples' National Bank, 153 Ala. 576, 45 So. 194; Orr v. Sparkman, 120 Ala. 9, 23 So. 829; Holmes v. Bank of Fort Gaines, 120 Ala. 493, 24 So. 959; Commercial Credit Co. v. Tarwater, 215 Ala. 123, 110 So. 39, 40, 48 A.L.R. 1437; Valley Mortgage Co. v. Patterson, 30 Ala.App. 492, 8 So.2d 213.

The note sued on is a renewal of a note dated September 22, 1939, executed and delivered by appellant under the circumstances outlined above, and upon the execution and delivery of which, certain notes, together with the security securing them, were delivered to Smith and Berry. It is insisted that the note sued on is nothing more nor less than a renewal of the notes delivered or returned to Smith and Berry, and that the returned notes were tainted with usury on account of the deduction of ten per cent from the amount of the notes which was held by the bank in the "reserve fund." But we need not, and do not, decide whether the returned notes were tainted with usury.

The note sued on was executed and delivered to protect the bank against the loss of money collected by Smith and Berry, and by them wrongfully applied to their own use. And while it is true that if the original transaction was tainted with usury the infirmity adheres to all subsequent transactions, having the effect of a device for evading the usury statute. But this is not so as to a bona fide novation of the debt. Rudisill Soil Pipe Co. v. Eastham Soil Pipe

& F. Co., 210 Ala. 145, 97 So. 219; 66 C.J. 260, section 227.

The finding of the trial court to the effect that there was a bona fide novation of the debt or debts is amply supported by the evidence.

The evidence is in direct conflict as to whether or not the "reserve fund" and other so called extra collateral was to be applied first to the payment of the note signed by appellant or to other obligations of Smith and Berry to the bank. The trial court found that it was to be applied first to other obligations. We are in accord with this finding.

Appellant not having sustained the defense of usury, he is liable for attorneys' fees provided in the note signed by him, and for court costs. No claim is made that the attorneys' fee allowed by the trial court is excessive.

Finding no error in the record, the cause is due to be and is affirmed.

Affirmed.

GARDNER, C. J., and THOMAS and BROWN, JJ., concur.